THIS PLAN IS BEING SUBMITTED FOR APPROVAL BUT IT HAS NOT BEEN APPROVED BY THE BANKRUPTCY COURT. THIS IS NOT A SOLICITATION OF ACCEPTANCE OR REJECTION OF THE PLAN. THE INFORMATION IN THE PLAN IS SUBJECT TO CHANGE. THIS PLAN IS NOT AN OFFER TO SELL ANY SECURITIES AND IS NOT SOLICITING AN OFFER TO BUY ANY SECURITIES.

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| **MTPC, LLC,** | ) Case No. 3:20-bk-05438 (RSM) |
| | ) |
| **THE PROTON THERAPY CENTER, LLC,** | ) |
| | ) |
| **PCPT HAMLIN, LLC,** | ) |
| | ) |
| | ) |
| | ) **Judge Randal S. Mashburn** |
| **Debtors.** | ) |
| | ) **(Jointly Administered)** [1] |

### [PROPOSED] FIRST AMENDED CHAPTER 11 PLAN FOR
### THE PROTON THERAPY CENTER, LLC, CASE NO. 20-05439

**MCDERMOTT WILL & EMERY, LLP**

Marcus A. Helt (admitted *pro hac vice*)
Jack G. Haake (admitted *pro hac vice*)
2501 North Harwood Street, Suite 1900
Dallas, Texas 75201
Tel: (214) 210-2821
Fax: (972) 528-5765
mhelt@mwe.com
jhaake@mwe.com

**WALLER LANSDEN DORTCH & DAVIS, LLP**

David E. Lemke (Tenn. Bar No. 013586)
Tyler N. Layne (Tenn. Bar No. 033401)
511 Union Street, Suite 2700
Nashville, Tennessee 37219
Telephone: (615) 244-6380
Facsimile: (615) 244-6804
David.Lemke@wallerlaw.com
Tyler.Layne@wallerlaw.com

*COUNSEL FOR THE DEBTOR*
*AND DEBTOR-IN-POSSESSION*

---

[1] The jointly administered respective case numbers in these Chapter 11 cases include: MTPC, LLC ("**MTPC**"), Case Number 3:20-bk-05438; The Proton Therapy Center, LLC ("**PCPTK**"), Case Number 3:20-bk-05439; PCPT Hamlin, LLC ("**PCPT Hamlin**"), Case Number 3:20-bk-05440. The Debtor's service address is: 1400 Dowell Springs Boulevard, Suite 350, Knoxville, TN 37909-2447.

# TABLE OF CONTENTS

**Page**

Article I DEFINITIONS, RULES OF INTERPRETATION, AND CONSTRUCTION...............6

Section 1.01     Defined Terms.........................................................................6
Section 1.02     Other Terms...........................................................................19
Section 1.03     Rules of Construction.........................................................19
Section 1.04     Exhibits, Supplements, Appendices, and Schedules.............19
Section 1.05     Controlling Document.........................................................19

Article II TREATMENT OF UNCLASSIFIED CLAIMS .........................................19

Section 2.01     Administrative Claims .........................................................19
Section 2.02     Supplemental Administrative Claim Bar Date.....................20
Section 2.03     Priority Tax Claims .............................................................21

Article III CLASSIFICATION AND TREATMENT OF CLASSIFIED CLAIMS AND
INTERESTS.............................................................................................21

Section 3.01     General Notes on Classification and Treatment of
Classified Claims and Interests ...............................................21
Section 3.02     Special Provision Governing Unimpaired Claims ................22
Section 3.03     Classification and Treatment of Classified Claims and
Interests ................................................................................22

Article IV VOTING AND DISTRIBUTIONS UNDER THE PLAN .........................27

Section 4.01     Voting of Claims and Interests..............................................27
Section 4.02     Elimination of Vacant Classes .............................................27
Section 4.03     Distributions Under the Plan.................................................27
Section 4.04     Distribution Deadlines .........................................................28
Section 4.05     Manner of Payment Under the Plan......................................28
Section 4.06     De Minimis Distributions.....................................................28
Section 4.07     Unclaimed Property .............................................................28
Section 4.08     Time Bar to Cash Payments.................................................28

Article V IMPLEMENTATION OF PLAN .........................................................29

Section 5.01     Creation of the Liquidation Trust and Appointment of
Liquidation Trustee...............................................................29
Section 5.02     Rights, Powers, and Duties of the Liquidation Trust and
the Liquidation Trustee .........................................................30
Section 5.03     Liquidation Trust Interests ...................................................31
Section 5.04     Implementation ...................................................................32
Section 5.05     Liquidation Trust Accounts ..................................................32
Section 5.06     Retention of Professionals by Liquidation Trust ..................32
Section 5.07     Termination of the Liquidation Trust....................................32
Section 5.08     Resignation or Removal of Liquidation Trustee....................32
Section 5.09     Creation of the GUC Liquidation Trust and
Appointment of GUC Liquidation Trustee ...........................32

i

Section 5.10     Rights, Powers, and Duties of the GUC Liquidation
Trust and the GUC Liquidation Trustee................................................33
Section 5.11     GUC Liquidation Trust Interests................................................34
Section 5.12     Implementation ................................................35
Section 5.13     GUC Liquidation Trust Accounts ................................................35
Section 5.14     Retention of Professionals by GUC Liquidation Trust.........................35
Section 5.15     Termination of the GUC Liquidation Trust ................................................35
Section 5.16     Resignation or Removal of GUC Liquidation Trustee .........................35
Section 5.17     Funding for the Plan................................................35
Section 5.18     Cancellation of Liens ................................................36
Section 5.19     Establishment of Reserves ................................................36
Section 5.20     General Settlement of Claims ................................................36
Section 5.21     Cancellation of Existing Securities and Agreements..........................36
Section 5.22     Notice of Effective Date................................................37
Section 5.23     Corporate Action ................................................37
Section 5.24     Dissolution of the Committee ................................................37
Section 5.25     Confidentiality, Privilege ................................................37
Section 5.26     Distributions to Holders of Claims and Interests ...............................37
Section 5.27     Disputed Claims................................................38
Section 5.28     Claims Paid or Payable by Third Parties................................................39
Section 5.29     Special Issues Regarding Insured Claims ................................................40
Section 5.30     Miscellaneous Distribution Provisions ................................................40
Section 5.31     Allocation of Payments ................................................41
Section 5.32     Setoffs ................................................41
Section 5.33     Exemption from Transfer Taxes ................................................41
Section 5.34     Disputed Payments................................................41
Section 5.35     Withholding Taxes ................................................41
Section 5.36     Request for Expedited Determination of Taxes ...................................42
Section 5.37     Resignation of Directors and Officers................................................42
Section 5.38     Liability; Indemnification; No Agency Relationship...........................42
Section 5.39     Plan Settlements................................................42

Article VI  EFFECT OF PLAN ON CLAIMS, INTERESTS, AND CAUSES OF ACTION ......44

Section 6.01     Binding Effect................................................44
Section 6.02     Term of Injunctions or Stays................................................44
Section 6.03     Retention of Rights and Causes of Action ................................................44
Section 6.04     Releases by the Debtor and its Estate ................................................45
Section 6.05     Releases by holders of Claims and Interests ................................................45
Section 6.06     Injunction ................................................46
Section 6.07     Preservation and Application of Insurance ................................................47
Section 6.08     Compromise of Controversies................................................48
Section 6.09     Solicitation of Plan ................................................48
Section 6.10     Post-Confirmation Activity ................................................48
Section 6.11     Avoidance Actions ................................................48
Section 6.12     Contingent Claims................................................48

DM_US 192080091-6.114791.0011
Case 3:20-bk-05438   Doc 1381   Filed 12/09/22   Entered 12/09/22 18:19:46   Desc
Main Document   Page 3 of 63

Article VII  EXECUTORY CONTRACTS AND UNEXPIRED LEASES .................................49

    Section 7.01    Executory Contract and Unexpired Leases ...........................................49
    Section 7.02    Rejection Damages Bar Date ..................................................................49
    Section 7.03    Effect of Post-Confirmation Rejection....................................................49

Article VIII  CONDITIONS TO CONFIRMATION AND OCCURRENCE OF EFFECTIVE
        DATE ..........................................................................................................49

    Section 8.01    Conditions to Confirmation ...................................................................49
    Section 8.02    Conditions to Occurrence of Effective Date .........................................49
    Section 8.03    Effect of Nonoccurrence of the Conditions to
                        Occurrence of Effective Date....................................................50

Article IX  CONFIRMABILITY AND SEVERABILITY OF THE PLAN ................................50

    Section 9.01    Reservation of Rights as to Plan ...........................................................50
    Section 9.02    Confirmation in Accordance with Section 1129(b) .............................51

Article X  ADMINISTRATIVE PROVISIONS ........................................................................51

    Section 10.01    Retention of Jurisdiction .......................................................................51
    Section 10.02    Courts of Competent Jurisdiction ........................................................53
    Section 10.03    Governing Law.......................................................................................53
    Section 10.04    Effectuating Documents and Further Transactions..............................53
    Section 10.05    Immediate Binding Effect ......................................................................53
    Section 10.06    No Admissions .......................................................................................53
    Section 10.07    Payment of Statutory Fees .....................................................................53
    Section 10.08    Abandonment of Certain Assets............................................................53
    Section 10.09    Books and Records.................................................................................54
    Section 10.10    Amendments ..........................................................................................54
    Section 10.11    Successors and Assigns .........................................................................55
    Section 10.12    Confirmation Order and Plan Control...................................................55
    Section 10.13    Notices....................................................................................................55
    Section 10.14    Post-Effective Date Notice.....................................................................56
    Section 10.15    Substantial Consummation ....................................................................56
    Section 10.16    Post-Confirmation Fees and Reports ....................................................56
    Section 10.17    Deemed Acts ..........................................................................................56
    Section 10.18    Reservation of Rights.............................................................................57
    Section 10.19    Term of Injunctions or Stays.................................................................57
    Section 10.20    Entire Agreement ..................................................................................57

DM_US 192080091-6.114791.0011

# INTRODUCTION

The Proton Therapy Center, LLC, as debtor and debtor-in-possession in this Chapter 11 Case (defined below), respectfully proposes the following Chapter 11 Plan pursuant to section 1121(a) of the Bankruptcy Code. Capitalized terms used herein and not otherwise defined shall have the meanings ascribed to them in Article I.A of the Plan.

The Plan contemplates a liquidation of the Debtor's assets and the resolution of all outstanding Claims against and Interests in the Debtor. It also includes a settlement between the Debtor and the Committee that will facilitate a Distribution to holders of non-insider general unsecured claims, as more fully described in the Plan. The Debtor has run a sale process for the sale of substantially all its assets. The Plan will distribute proceeds from the sale and create (i) a Liquidation Trust to pursue certain causes of action, wind down the Debtor's Estate, and make Distributions to holders of Allowed Claims, other than GUC Claims, pursuant to the terms of the Plan and Liquidation Trust Agreement and (ii) a GUC Liquidation Trust to reconcile GUC Settlement Claims and make Distributions to holders of Allowed GUC Settlement Claims pursuant to the terms of the Plan and GUC Liquidation Trust Agreement. The Debtor is seeking to have the hearing on the approval of the Disclosure Statement on an expedited basis and then the Confirmation Hearing on or around January 31, 2023.

Reference is made to the Disclosure Statement for a discussion of the Debtor's history, the sale process, and a summary and analysis of the Plan and other related matters, including Distributions to be made under the Plan. The Debtor is the proponent of the Plan within the meaning of section 1129 of the Bankruptcy Code. Only holders of certain Claims and Interests specified in Section 3.03 are entitled to vote on the Plan.

**ALL CREDITORS ENTITLED TO VOTE ON THE PLAN ARE ENCOURAGED TO READ THE PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY AND CONSULT WITH COUNSEL AND OTHER APPLICABLE PROFESSIONALS BEFORE VOTING TO ACCEPT OR REJECT THE PLAN. WITHOUT LIMITING THE FOREGOING, ALL HOLDERS OF CLAIMS OR INTERESTS ARE URGED TO CAREFULLY READ THE RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS SET FORTH IN Article VI BECAUSE SUCH PROVISIONS AFFECT NOT ONLY SUCH HOLDERS' RIGHTS AND CLAIMS AGAINST THE DEBTOR, BUT ALSO SUCH HOLDERS' RIGHTS AND CLAIMS AGAINST CERTAIN NON-DEBTOR PERSONS IDENTIFIED IN SUCH ARTICLE. SUBJECT TO CERTAIN RESTRICTIONS REQUIREMENTS SET FORTH IN SECTION 1127 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 3019, AND THE PLAN, THE DEBTOR RESERVES THE RIGHT TO ALTER, AMEND, MODIFY, REVOKE, OR WITHDRAW THE PLAN PRIOR TO ITS SUBSTANTIAL CONSUMMATION.**

DM_US 192080091-6.114791.0011

### SUMMARY OF THE PLAN

1. **Summary Only.** The following is a brief summary of the Plan's general terms and does not form a part of the Plan. This summary is qualified in its entirety by reference to the provisions of the Plan. Capitalized terms used in this summary are defined in the Plan.

2. **Plan Summary.** The Plan's goal is to distribute proceeds from the Bankruptcy Court-approved sale of substantially all the Debtor's Assets. The Plan will also create two trusts: (i) a Liquidation Trust and appoint a Liquidation Trustee to pursue certain causes of action and wind down the Debtor's estate, and (ii) a GUC Liquidation Trust and appoint the GUC Liquidation Trustee to reconcile GUC Settlement Claims and make Distributions to Allowed GUC Settlement Claims.

3. **Treatment of Claims.** Subject to the provisions in this Plan and except to the extent the Debtor or the Liquidation Trustee, as applicable, and the holder of an Allowed Administrative Claim agree to different treatment, the Debtor or the Liquidation Trustee, as applicable, shall pay, in full satisfaction and release of such Claim, to each holder of an Allowed Administrative Claim, Cash, in an amount equal to such Allowed Administrative Claim, on the later of (i) the Effective Date and (ii) the first Business Day after the date that is thirty (30) calendar days after the date on which such Administrative Claim becomes an Allowed Administrative Claim, or as soon thereafter as is practicable. Allowed Administrative Claims shall be paid (x) *first*, from the funds in the Administrative and Priority Claims Reserve, and (y) *second*, from Available Cash. For the avoidance of doubt, Professional Fee Claims shall be Allowed Administrative Claims.

For Priority Tax Claims, except to the extent the Debtor or the Liquidation Trustee, as applicable, and the holder of an Allowed Priority Tax Claim agree to a different and less favorable treatment, the Liquidation Trustee shall pay, in full satisfaction and release of such Claim, to each holder of a Priority Tax Claim, Cash, in an amount equal to such Allowed Priority Tax Claim, on the later of: (a) the Effective Date and (b) the first Business Day after the date that is thirty (30) calendar days after the date on which such Priority Tax Claim becomes an Allowed Priority Tax Claim, or as soon thereafter as is practicable.

A brief summary of the treatment of the classified Classes of Claims is set forth below:

| Class | Claims and Interests | Status | Treatment: Liquidation Alternative | Estimated Claim Pool / Projected Recovery |
|-------|---------------------|--------|-----------------------------------|-------------------------------------------|
| 1 | Other Priority Claims | Unimpaired; Not entitled to vote; Conclusively presumed to have accepted the Plan | Except to the extent that a holder of an Allowed Priority Claim agrees to a less favorable treatment of such Claim, in full and final satisfaction of such Allowed Other Priority Claim, at the sole option of the Debtor or the Liquidation Trustee, each | $6,299<br><br>100% |

1

| | | | holder of an Allowed Priority Claim shall receive: (A) Cash in an amount equal to the amount of such Allowed Priority Claim from the Administrative and Priority Reserve Account on the later of (1) the Effective Date, and (2) for Claims in Class 1 that were Disputed Claims and thereafter became Allowed Priority Claims, thirty (30) days following the date upon which such Claims became Allowed Priority Claims, or as soon thereafter as is practicable, (B) such other treatment so as to render such holder's Allowed Priority Claim Unimpaired. | |
|---|---|---|---|---|
| 2 | Secured Tax Claims | Unimpaired; Not entitled to vote; Conclusively presumed to have accepted Plan | Except to the extent that the holder of an Allowed Class 2 Secured Tax Claim agrees to less favorable treatment of its Allowed Class 2 Secured Claim, in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed Class 2 Secured Claim, each such holder shall receive, at the Liquidation Trustee's option, as applicable: (a) payment in accordance with § 1129 of the Bankruptcy Code or (b) surrender of the collateral that secured such Allowed Class 2 Secured Claim prior to the Effective Date. The amount, validity, extent, value, and priority of the Allowed 2 Claim under §§ 505, 506, and 511 of the Bankruptcy Code will be determined by the Bankruptcy Court after the Effective Date. Any Deficiency Claim or other Unsecured Claim of a holder of Class 2 Claim shall be treated as | $0 100% |

2

| | | | a Class 8 Non-Settling General Unsecured Claim. | |
|---|---|---|---|---|
| 3 | Secured Lender Prepetition Claim | Impaired; Entitled to Vote | In full and final satisfaction, settlement, release, and discharge of and in exchange for each Secured Lender Prepetition Claim and any and all claims that could be and have been asserted by the Secured Lender and the holders of Secured Lender Prepetition Claims, each holder of an Allowed Secured Lender Prepetition Claim shall be entitled to receive (a) its Pro Rata Share, as reflected in the books and records of the Secured Lender, of the amount of the Secured Lender Claims Distribution, (b) treatment as a Released Party under the Plan. The Secured Lender Prepetition Claims are Allowed Claims under the Plan. For the avoidance of doubt, the satisfaction, settlement, release and discharge of the Secured Lender Prepetition Claim does not satisfy, settle, or release the Deficiency Claims of holders of Secured Lender Prepetition Claims, which are expressly preserved. Any Deficiency Claim or other Unsecured Claim of a holder of a Class 3 Claim shall be treated in Class 7 as a Bond Deficiency Claim. | $112,681,255.67<br><br>Approx. 26-30%[2] |
| 4 | Other Secured Claims | Impaired; Entitled to Vote | Provided that the holder of a Class 4 Secured Claim has not yet been paid, on the later of (A) the Effective Date and (B) for Claims in Class 4 that were | $0<br><br>100% |

---

[2] Projected recovery percentage for Senior Secured Claims is calculated based on the assumption that the holders of the Secured Lender Prepetition Claim receive a Distribution in the amount of $30,000,000 pursuant to the Distribution Order.

| | | | Disputed Claims on the Effective Date and have thereafter become Allowed Secured Claims, immediately following the date upon which such Claims became Allowed Secured Claims, or as soon thereafter as is practicable, holders of each such Allowed Secured Claim shall receive in full and final satisfaction, settlement, release, and discharge of and in exchange for each such Allowed Secured Claim (1) Cash in an amount not to exceed the amount of such Allowed Secured Claim, (2) the Collateral securing such Allowed Secured Claim (in which case any deficiency claim shall become a Class 8 Non-Settling General Unsecured Claim), or (3) such other treatment as may be agreed upon by the Debtor or the Liquidation Trustee and the holder of such Allowed Secured Claim, or as may otherwise be provided in the Bankruptcy Code, provided that the holder of such Allowed Secured Claim will not receive more than the value of the Collateral securing such Claim. | |
| 5 | GUC Settlement Claim | Impaired; Entitled to Vote | In full and final satisfaction, settlement, release, and discharge of and in exchange for each Class 5 GUC Settlement Claim, such holder of each such Allowed GUC Settlement Claim shall receive its Pro Rata share of uncertificated beneficial interests in the GUC Liquidation Trust representing the right of each holder of an Allowed GUC Settlement Claim to receive | $3,123,970<br><br>Approx. 4-7% |

4

| | | | Distributions from the GUC Liquidation Trust in accordance with the Plan and the GUC Liquidation Trust Agreement. | |
|---|---|---|---|---|
| 6 | Insured Claims | Impaired; Entitled to Vote | In full and final satisfaction, settlement, release, and discharge of and in exchange for each Class 6 Insured Claims, such holder of each such Allowed Insured Claims shall recover only from the available insurance and the Debtor shall be discharged to the extent of any such excess. As of the Effective Date, all Insured Claims are Disputed Claims. | Unknown |
| 7 | Bond Deficiency Claims | Impaired; Entitled to Vote | In full and final satisfaction, settlement, release, and discharge of and in exchange for each Class 7 Bond Deficiency Claim, such holder of each such Allowed Bond Deficiency Claim shall receive its Pro Rata share of uncertificated beneficial interests in the Liquidation Trust representing the right of each holder of a Bond Deficiency Claim to receive Distributions from the Liquidation Trust in accordance with the Plan and the Liquidation Trust Agreement. | Unknown |
| 8 | Non-Settling General Unsecured Claims | Impaired: Entitled to Vote | In full and final satisfaction, settlement, release, and discharge of and in exchange for each Class 8 Non-Settling General Unsecured Claim, such holder of each such Allowed Non-Settling General Unsecured Claim shall receive its Pro Rata share of uncertificated beneficial interests in the Liquidation Trust representing the right of each holder of a Non-Settling General | Unknown |

DM_US 192080091-6.114791.0011

| | | | Unsecured Claim to receive Distributions from the Liquidation Trust in accordance with the Plan and the Liquidation Trust Agreement. | |
|---|---|---|---|---|
| 9 | Insider Claims | Impaired: Not entitled to vote; Deemed to reject Plan | Holders of Insider Claims shall not receive any Distributions on account of such Insider Claims. | $15,905,806 <br><br> 0% |
| 10 | Intercompany Claims | Impaired: Not entitled to vote; Deemed to reject Plan | Holders of Intercompany Claims, other than Allowed Administrative Claims, shall not receive any Distributions on account of such Intercompany Claims. | $0 <br><br> 0% |
| 11 | Subordinated Claims | Impaired: Not entitled to vote; Deemed to reject Plan | Holders of Subordinated Claims will not receive any Distributions on account of such Claims under the Plan. | $0 <br><br> 0% |
| 12 | Interests | Impaired; Not entitled to vote; Deemed to reject Plan | On the Effective Date, all Interests shall be deemed canceled, extinguished and of no further force or effect, and the holders of Interests shall not be entitled to receive or retain any property on account of such Interests. | 0% |

## ARTICLE I

## DEFINITIONS, RULES OF INTERPRETATION, AND CONSTRUCTION

**Section 1.01   Defined Terms**. For the purpose of the Plan, the following terms set forth in this Article I shall have the respective meanings set forth below.

"**502(h) Claims**" means Claims arising under section 502(h) of the Bankruptcy Code. 502(h) Claims held by Persons or Entities that are not Insiders will receive treatment in Class 8 as Non-Settling General Unsecured Claims, and 502(h) Claims held by Persons or Entities that are Insiders will receive treatment in Class 9 as Insider Claims.

"**Administrative Claim**" means any Claim under sections 503(b) and 507(a)(2) of the Bankruptcy Code, including, without limitation: (a) the actual, necessary costs and expenses

6

incurred by the Debtor after the Petition Date of preserving the Estate or operating the Debtor's business; (b) Professional Fee Claims; (c) US Trustee Fees; and (d) any Allowed Claims that are entitled to be treated as Administrative Claims pursuant to a Final Order of the Bankruptcy Court.

"**Administrative Claims Bar Date**" means the date established by the Administrative Claims Bar Date Order (i.e., September 23, 2022) by which requests for payment of Administrative Claims must be filed, subject to any exceptions specifically set forth therein or as extended by the Bankruptcy Court.

"**Administrative Claims Bar Date Order**" means the Order Setting Administrative Claims Bar Date and Approving Form and Manner of Service [Docket No. 1233]

"**Administrative and Priority Claims Reserve**" means a reserve to be established by the Debtor on or before the Effective Date from the Sale Proceeds, and administered thereafter by the Liquidation Trustee, in an amount sufficient to pay all estimated accrued but unpaid Administrative Claims (including Professional Fee Claims), Priority Claims, and Priority Tax Claims to the extent that such Claims have not been paid in full on or before the Effective Date consistent with section 1129(a)(9) of the Bankruptcy Code. The amount of Cash to be transferred to the Administrative Claims Reserve Account before the Effective Date shall be disclosed in the Plan Supplement.

"**Affiliate**" has the meaning set forth in § 101(2) of the Bankruptcy Code.

"**Allowed**" means, with respect to a Claim, the extent to which a Claim: (a) is not disallowed or expunged by stipulation or Final Order of the Bankruptcy Court; (b) is not objected to within the period fixed by the Plan or established by the Bankruptcy Court, if the Claim (i) was scheduled by the Debtor pursuant to the Bankruptcy Code and the Bankruptcy Rules in a liquidated amount and not listed as contingent, unliquidated, or disputed, or (ii) was timely filed (or deemed timely filed) pursuant to the Bankruptcy Code, the Bankruptcy Rules, or any applicable orders of the Bankruptcy Court; (c) for which an objection has been filed, but such objection has been withdrawn or determined by a Final Order (but only to the extent such Claim has been allowed); (d) is determined to be valid by the Liquidation Trustee; (e) is the Secured Lender Prepetition Claim or (f) is otherwise allowed by Final Order, including, without limitation, the Confirmation Order. A Proof of Claim that is not timely filed (or not deemed timely filed) shall not be Allowed for purposes of distribution under the Plan. Moreover, all or any portion of a Claim that is satisfied in connection with the Sale Transaction or released during the Chapter 11 Case is not an Allowed Claim.

"**Assets**" means all assets of the Debtor of any nature whatsoever, including, without limitation, all property of the Estate pursuant to section 541 of the Bankruptcy Code, Cash (including proceeds from the Sale), Causes of Action, accounts receivable, tax refunds, claims of right, interests and property, real and personal, tangible and intangible, and proceeds from all of the foregoing.

"**Available Cash**" means, as of any given Distribution Date, all the Debtor's or Liquidation Trustee's Cash, as applicable, less the remaining balances in the Liquidation Trust Funding Reserve and the Administrative and Priority Claims Reserve.

"**Avoidance Action**" means any and all actual or potential claims and causes of action to avoid a transfer of property or an obligation incurred by the debtor pursuant to any applicable section of the Bankruptcy Code, including §§ 502, 510, 542, 544, 547, 548, 549, 550, 551, 553 and 724(a) under similar or related state or federal statues and common law.

"**Ballot**" means the ballots accompanying the Disclosure Statement upon which holders of Impaired Claims entitled to vote may indicate their acceptance or rejection of the Plan and have the option to opt out of the release contained in Section 6.05, which must be actually received on or before the Voting Deadline in accordance with the procedures governing the solicitation process.

"**Bankruptcy Code**" means title 11 of the United States Code, as now in effect or as hereafter amended, as applicable to the Chapter 11 Case.

"**Bankruptcy Court**" means the United States Bankruptcy Court for Middle District of Tennessee, which has jurisdiction over the Chapter 11 Case.

"**Bankruptcy Rules**" means the Federal Rules of Bankruptcy Procedure, as promulgated by the United States Supreme Court pursuant to section 2075 of title 28 of the United States Code, and any applicable rules of the Bankruptcy Court, as amended, from time to time and as applicable to the Chapter 11 Case.

"**Bar Date**" means such dates established by the Bankruptcy Court as the last date for filing proofs of claim or requests for allowance of Administrative Claims, as applicable, against the Debtor, including those bar dates set forth in this Plan, the Bar Date Order, and the Administrative Claims Bar Date Order.

"**Bar Date Order**" means the order entered on January 20, 2021, at Docket No. 184.

"**Bidding Procedures Order**" means the order of the Bankruptcy Court under sections 105 and 363 of the Bankruptcy Code, approving bidding procedures for the Sale, dated August 27, 2021 [Docket No. 675].

"**Bond Trustee**" means UMB Bank, National Association, which replaced U.S. Bank National Association as the Master Trustee pursuant to the Master Trust Indenture.

"**Bond Deficiency Claim**" means the Deficiency Claim of Bondholders after the Secured Lender Claims Distribution.

"**Bondholders**" means holders of Series 2014 Knoxville Bonds.

"**Business Day**" means any day except a Saturday, Sunday, or "legal holiday" as such term is defined in Bankruptcy Rule 9006(a).

"**Buyer**" means Covenant Health.

"**Cash**" means cash and cash equivalents denominated in U.S. dollars.

"**Causes of Action**" means any and all claims, actions, causes of action, choses in action, rights, demands, Liens, suits, liabilities, encumbrances, lawsuits, adverse consequences, debts, damages, dues, sums of money, obligations, accounts, reckonings, deficiencies, bonds, bills, disbursements, expenses, losses, specialties, covenants, guaranties, contracts, controversies, agreements, promises, variances, trespasses, powers, judgments, privileges, licenses, franchises, remedies, rights of setoff, rights of recoupment, third-party claims, subrogation claims, defenses, contribution claims, reimbursement claims, indemnity claims, counterclaims, and cross-claims (including those of the Debtor and/or the Estate), each of any kind or character whatsoever, whether known or unknown, foreseen or unforeseen, suspected or unsuspected, liquidated or unliquidated, fixed or contingent, matured or unmatured, secured or unsecured, disputed or undisputed, and whether held or assertable in a personal or representative capacity, based in law or equity, including under the Bankruptcy Code or under any other federal or state statute or common law, whether in contract or tort or any other theory of law, whether direct, indirect, derivative, or otherwise, whether arising before, on, or after the Petition Date, and whether asserted or unasserted as of the Effective Date, including, without limitation, (i) the right to object to, challenge or otherwise contest any claims, whether or not any such claim is the subject of a Proof of Claim; (ii) any right of setoff, counterclaim, or recoupment and any claim for breach of contract or for breach of duties imposed by law or in equity; (iii) any claim pursuant to § 362; (iv) any claim or defense including fraud, mistake, duress, and usury, and any other defenses set forth in § 558; (v) all claims, causes of action (avoidance or otherwise), objections, rights, and remedies arising under Chapter 5 of the Bankruptcy Code pursuant to, among others, §§ 502, 510, 542 through 545 and 547 through 553 or 558 thereof, or similar or equivalent claims, causes of action, objections, rights, and remedies arising under state law, including all Avoidance Actions, irrespective of whether or not the targets of such causes of action have been identified by name, or any transfers subject to avoidance have been listed, in the Debtor's Schedules, the Disclosure Statement, this Plan, or any other document filed in the Chapter 11 Case; (vi) claims under any insurance policies applicable to the Debtor, including the D&O Insurance Policy; (vii) all claims, causes of action, and other rights (including rights to challenge any asserted Lien) of any kind or nature against any party asserting a claim in this Chapter 11 Case, unless expressly and in writing released or waived during the Chapter 11 Case, including under this Plan; (viii) all legal and equitable defenses against any Claim or Cause of Action asserted against the Debtor; (ix) all claims and/or Causes of Action of any kind or nature arising under state or federal law arising under a theory of negligence, professional negligence, and/or malpractice against the Debtor's and/or its affiliate's, non-debtor affiliate's, subsidiaries', and related parties' auditors and consultants; (x) all claims and/or Causes of Action of any kind or nature arising under state law based fraudulent conveyance theories; and (xi) all claims and/or Causes of Action constituting, for, based upon, or relating to a breach of fiduciary duty, a tort, a contract, federal or state preference or fraudulent transfer laws, or any federal or state statutory rights or requirements, whether based in law or equity, against any of the current and former directors, officers, managers, and members of the Debtor and/or its affiliates, subsidiaries, non-debtor affiliates, and related parties. The foregoing definition shall be construed in accordance with its broadest possible meaning, and any doubts or ambiguities shall be resolved in favor of inclusivity. **Except as otherwise expressly provided in the Plan, any and all Causes of Action are preserved under the Plan.**

"**Chapter 11 Case**" means the case commenced under Chapter 11 of the Bankruptcy Code by the Debtor, and jointly administered for procedural purposes under MTPC, LLC, Chapter 11 Case No. 20-05438, currently pending before the Bankruptcy Court.

"**Claim**" means a "claim," as defined in section 101(5) of the Bankruptcy Code, against a Debtor, whether or not asserted, whether or not the facts or legal bases therefor are known or unknown, and specifically including, without express or implied limitation, any rights under sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, any claim of a derivative nature, any potential or unmatured contract claims, and any other contingent claim.

"**Claims and Balloting Agent**" means Stretto, the noticing, balloting, and administrative agent employed by the Debtor by the order entered December 23, 2020 (Docket No. 84).

"**Claims Objection Bar Date**" means the first Business Day that is not less than 180 days after the Effective Date. The time period for filing objections to Claims shall automatically renew for successive periods of one hundred eighty (180) days each until the earlier of (i) the date upon which all Claims have been Allowed or Disallowed or (ii) the date fixed by the Bankruptcy Court upon motion of the Liquidation Trustee, or a holder or a Claim.

"**Class**" means a category of Claims or Interests set forth in Article III of the Plan.

"**Collateral**" means any property or interest in property of the Estate subject to an unavoidable Lien to secure the payment or performance of a Claim.

"**Committee**" means the Official Committee of Unsecured Creditors appointed in the Chapter 11 Case pursuant to section 1102(a) of the Bankruptcy Code on January 8, 2021 [Docket No. 144] and amended on August 15, 2022 [Docket No. 1220].

"**Committee Members**" means the following current and former members of the Committee, in each case solely in its capacity as a member of the Committee: (a) Raysearch Americas, Inc.; (b) IBA Proton Therapy, Inc.; and (c) Boston Scientific Corporation.

"**Committee Settlement**" shall have the meaning set for in Section 5.39(1).

"**Confirmation Date**" means the date on which the Confirmation Order is entered on the docket of the Chapter 11 Case.

"**Confirmation Hearing**" means the combined hearing or hearings conducted by the Bankruptcy Court to consider confirmation of the Plan as it may be modified hereafter from time to time and the adequacy of the Disclosure Statement.

"**Confirmation Order**" means the order confirming the Plan.

"**D&O Claims**" means all Causes of Action against the current and former members, managers, and/or officers of the Debtor that are Preserved Claims, as the term may be modified or enhanced under the terms of the Plan Supplement.

"**D&O Insurance Policies**" means all insurance policies issued at any time to or on behalf of the Debtor for directors', managers', and officers' liability existing or maintained by or on behalf of the Debtor as of the Effective Date (including any "tail policy" or run-off coverage) and all agreements, documents, or instruments relating thereto.

"**Debtor**" means, The Proton Therapy Center, LLC.

"**Deficiency Claim**" means, with respect to any Claims asserted as a Secured Claim, a Claim in an amount equal to the difference between the total Allowed amount of the Claim and the value of any Collateral securing such Claim (i.e., the total Allowed Claim amount minus the Allowed Secured Claim amount), as determined consistent with section 506(a) of the Bankruptcy Code or otherwise agreed to by the holder of the Claim.

"**Disallowed**" means any Claim or Interest, or any portion thereof, that (i) has been disallowed by Final Order or settlement; (ii) is scheduled in the amount of zero dollars ($0) or as contingent, disputed, or unliquidated on the Schedules and as to which a Claims Bar Date, Administrative Claims Bar Date, or Supplemental Administrative Claim Bar Date, as applicable, has been established but no Proof of Claim has been timely filed or deemed timely filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court, including the Bar Date Order or Administrative Claims Bar Date Order or otherwise deemed timely filed under applicable law; or (iii) is not scheduled on the Schedules and as to which a Bar Date or Administrative Claims Bar Date has been established but no Proof of Claim has been timely filed or deemed timely filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court, including the Bar Date Order or Administrative Claims Bar Date Order or otherwise deemed timely filed under applicable law. "Disallow" and "Disallowance" shall have correlative meanings.

"**Disclosure Statement**" means the disclosure statement for the Plan filed with the Bankruptcy Court by the Debtor in accordance with section 1125 of the Bankruptcy Code, including all exhibits and schedules thereto, as it may be amended from time to time.

"**Disclosure Statement Order**" means the order of the Bankruptcy Court conditionally approving the Disclosure Statement as containing adequate information pursuant to section 1125 of the Bankruptcy Code and approving voting and tabulation procedures.

"**Disputed**" means a Claim or an Interest (or portion thereof), (a) that is neither an Allowed Claim nor a Disallowed Claim; (b) that is listed on the Schedules as "disputed," "unliquidated," or "contingent;" or (c) for which a timely objection to such Claim has been filed, which objection has not been withdrawn or determined pursuant to a Final Order

"**Distribution**" means the distribution to holders of Allowed Claims in accordance with the Plan of any Assets, or other consideration distributed under Article IV herein.

"**Distribution Address**" means the address set forth in the applicable Proof of Claim, as such address may have been updated pursuant to Bankruptcy Rule 2002(g). If no Proof of Claim is or has been filed in respect of a particular Claim, "Distribution Address" means the address set

forth in the Debtor's Schedules, as such address may have been updated pursuant to Bankruptcy Rule 2002(g).

"**Distribution Date**" means any date on which the Liquidation Trustee or the GUC Liquidation Trustee, as applicable, determines that a Distribution, under or in accordance with the Plan, should be made to holders of Allowed Claims (or to a particular holder of an Allowed Claim) in light of, for example, resolutions of Disputed Claims, liquidation of Assets (including aggregate recoveries on account of Causes of Action), and the administrative costs of such a Distribution.

"**Distribution Motion**" means *The Proton Therapy Center, LLC's Motion to Approve Interim Distribution of Sale Proceeds to the Bond Trustee* [Docket No. 1333].

"**Distribution Order**" means *The Order Granting The Proton Therapy Center, LLC's Motion to Approve Interim Distribution of Sale proceeds to the Bond Trustee* [Docket No. 1376] authorizing the Debtor to distribute $30,000,000 to the Secured Lender on a final basis if no objections are received on or before December 16, 2022.

"**Distribution Record Date**" shall have the meaning set forth in Section 4.03.

"**District Court**" means the United States District Court for the Middle District of Tennessee.

"**DTC**" means Depository Trust and Clearing Corporation.

"**Effective Date**" means a Business Day, selected by the Plan Proponent, on which all conditions to the Effective Date have been satisfied or, if permitted, waived by the Plan Proponent, and on which no stay of the Confirmation Order shall be pending.

"**Entity**" has the meaning set forth in section 101(15) of the Bankruptcy Code.

"**Estate**" means the estate of the Debtor as created under section 541 of the Bankruptcy Code.

"**Exculpated Parties**" means, individually and collectively, in each case solely in their capacity as such, each and all of: (a) the Debtor's current Professionals; (b) the Debtor's directors and officers who served in such capacity as of the Petition Date solely as to matters concerning the chapter 11 case on and after the Petition Date; and (c) the Committee, the Committee Members, and the Committee's Professionals.

"**Executory Contract**" means a contract or lease to which the Debtor is a party that is subject to assumption, assumption and assignment, or rejection under section 365 of the Bankruptcy Code.

"**Final Distribution Date**" means the date on which the distribution is made from the Liquidation Trust or the GUC Liquidation Trust, as applicable, that finally and fully exhausts the assets of the Liquidation Trust or the GUC Liquidation Trust, as applicable.

DM_US 192080091-6.114791.0011

"**Final Order**" means an order or judgment of the Bankruptcy Court or other court of competent jurisdiction that: (a) is conclusive of all matters; (b) has not been reversed, stayed, or revoked; and (c) is effective. An order or judgment shall be deemed a Final Order, notwithstanding the possibility that a motion may be filed relating to such order or judgment pursuant to Bankruptcy Code § 502(j), Bankruptcy Rule 3008, Bankruptcy Rules 9023 and 9024, Federal Rule of Civil Procedure 59 and 60, or any analogous statute or rule.

"**Fee Claim Deadline**" shall have the meaning ascribed to it in in Section 2.02 of the Plan.

"**GUC Liquidation Trust**" means the trust described in Article V of the Plan to be established under Tennessee trust law that shall effectuate the terms of the Plan as it relates to the GUC Settlement Claims, including conducting the reconciliation of GUC Settlement Claims and making Distributions to holders of Allowed GUC Settlement Claims from the GUC Liquidation Trust Assets.

"**GUC Liquidation Trust Agreement**" means the trust agreement entered into by the GUC Liquidation Trustee as of the Effective Date, substantially in form and substance as that filed as part of the Plan Supplement, as it may be amended from time to time in accordance with its terms.

"**GUC Liquidation Trust Assets**" means the GUC Liquidation Trust Pool, which is the sole source of recovery of holders of GUC Settlement Claims.

"**GUC Liquidation Trust Interests**" means the uncertificated beneficial interests in the GUC Liquidation Trust representing the right of each holder of an Allowed GUC Settlement Claim to receive Distributions from the GUC Liquidation Trust in accordance with Article V of this Plan and the GUC Liquidation Trust Agreement.

"**GUC Liquidation Trust Pool**" means the Settlement Payment, which shall be used to pay for the GUC Liquidation Trustee's fees and expenses and any Distribution to Allowed GUC Settlement Claims.

"**GUC Liquidation Trustee**" means Michael E. Collins of Manier & Herod, P.C.

"**GUC Settlement Claim**" means an Unsecured Claim that is not an Administrative Claim, a Professional Fee Claim, a Priority Tax Claim, a Secured Claim, a Deficiency Claim, a Priority Claim, a Non-Settling General Unsecured Claim, an Insider Claim, an Insured Claim, a Bond Deficiency Claim, a 502(h) Claim, a Subordinated Claim, or an Intercompany Claim.

"**Impaired**" means any Class of Claims or Interests that is impaired within the meaning of section 1124 of the Bankruptcy Code.

"**Indemnified Parties**" shall have the meaning ascribed to it in Section 5.38 of the Plan.

"**Insurance Policy**" includes any policy of insurance coverage of any kind (including any and all amendments, endorsements, renewals, and extensions thereof) that at any time belong to or included or includes the Debtor as a named insured, additional insured, beneficiary, or assignee, including, without limitation, the D&O Policies.

"**Insider**" means any Person or Entity that is an insider, affiliate, or otherwise related to the Debtor by common ownership or through controlling parties, including, without limitation, ProVision Health Partners, LLC; Provision Healthcare, LLC; Provision Solutions, LLC, ProNova Solutions, LLC, and any Entities owned or controlled by Terry Douglass.

"**Insider Claims**" means Claims held by an Insider, including, without limitation, Claims arising under section 502(h) of the Bankruptcy Code.

"**Insured Claims**" means General Unsecured Claims arising prior to the Confirmation date involving personal injury, medical malpractice, or wrongful death (including slip-and-fall and medical malpractice Claims) that are covered by the terms of the Debtor's various insurance policies (including the Insurance Policies), or any other General Unsecured Claim against the Debtor for which the Debtor is entitled to indemnification, reimbursement, contribution, or other payment under a policy of insurance (including the Insurance Policies) under which the Debtor is an insured or beneficiary of the coverage provided under the applicable policy. All Insured Claims are Disputed Claims. Some of the Insured Claims are fully insured, and no deductible amount would be payable by Debtor under the terms of the applicable Insurance Policy. As to other Insured Claims, the Debtor may owe deductible amounts. For the avoidance of doubt, the Debtor shall not be responsible for any deductible or self-insured retention obligations, and all claims for such deductibles and self-insured retention obligations shall be treated as Class 5 GUC Settlement Claims to the extent Allowed. Further, no insurance carrier shall, or shall be entitled to, deny coverage under any insurance policy (including any Insurance Policy) based upon (i) any failure by the Debtor to pay any deductible or self-insured retention in full or (ii) the treatment of any claim for a deductible or self-insured retention obligation as a Class 6 Insured Claim or Class 5 GUC Settlement Claim. *See* Section 5.29 below for further information about issues relating to Insured Claims.

"**Intercompany Claim**" means any Claim, other than an Allowed Administrative Claim, asserted against the Debtor by MTPC or PCPT Hamlin.

"**Interest**" means any Interest or proxy related thereto, direct or indirect, in the Debtor, and represented by duly authorized, validly issued, and outstanding shares of preferred stock or common stock, stock appreciation rights, membership interests, partnership interests, or any other instrument evidencing a present ownership interest, direct or indirect, inchoate or otherwise, in the Debtor, or right to convert into such an Interest or acquire any Interest of the Debtor, whether or not transferable, or an option, warrant, or right, contractual or otherwise, to acquire any such interest, which was in existence prior to or on the Petition Date.

"**Knoxville Issuer**" means the Health, Educational and Housing Facility Board of the County of Knox.

"**Lien**" means any charge against, security interest in, encumbrance upon, or other interest in property to secure payment of a debt or performance of an obligation.

"**Liquidation Trust**" means the trust described in Article V of the Plan to be established under Tennessee trust law that shall effectuate the wind down of the Debtor and make Distributions pursuant to the terms of the Plan and Liquidation Trust Agreement. With respect to any action

14

required or permitted to be taken by the Liquidation Trust, the term includes the Liquidation Trustee or any other person authorized to take such action in accordance with the Liquidation Trust Agreement.

"**Liquidation Trust Agreement**" means the agreement to be entered into by the Liquidation Trustee as of the Effective Date, substantially in form and substance as that filed as part of the Plan Supplement, as it may be amended from time to time in accordance with its terms.

"**Liquidation Trust Assets**" means from and after the Effective Date (a) all Assets of the Debtor and the proceeds thereof save for and except the GUC Liquidation Trust Pool; (b) all legal and equitable interests of the Debtor in Causes of Action, including the Avoidance Actions, and the proceeds thereof; (c) all legal and equitable defenses or counterclaims of the Debtor to Claims; (d) the Liquidation Trust Funding Reserve; and (e) any other Assets to be vested in the Liquidation Trust pursuant to this Plan and the Liquidation Trust Agreement.

"**Liquidation Trust Funding Reserve**" means the reserve created by the Debtor or the Liquidation Trustee on or before the Effective Date from the Sale Proceeds to be utilized by the Liquidation Trustee to effectuate the liquidation of the remaining Assets hereunder, including, without limitation, to fund any necessary or appropriate litigation against third parties, in accordance with the Plan. The Liquidation Trustee may replenish the Liquidation Trust Funding Reserve from Available Cash from time to time.

"**Liquidation Trust Interests**" means the uncertificated beneficial interests in the Liquidation Trust representing the right of each holder of an Allowed Bond Deficiency Claims and Allowed Class 8 Non-Settling General Unsecured Claims to receive Distributions from the Liquidation Trust in accordance with Article V of this Plan and the Liquidation Trust Agreement.

"**Liquidation Trustee**" means the Person identified in the Plan Supplement as the Liquidation Trustee, and any successor Liquidation Trustee appointed as provided in the Liquidation Trust Agreement and retained as of the Effective Date pursuant to the terms of the Liquidation Trust Agreement, as the fiduciary responsible for implementing the applicable provisions of the Plan and the Liquidation Trust Agreement.

"**Master Trust Indenture**" means that certain Master Trust Indenture dated as of August 1, 2014, between the Debtor and U.S. Bank National Association as supplemented and amended by a Supplemental Master Trust Indenture, dated August 1, 2014.

"**Non-Settling General Unsecured Claim**" means an Unsecured Claim that is an Allowed Deficiency Claim (other than a Bond Deficiency Claim) of a holder of Class 2 Secured Tax Claims and Class 4 Other Secured Claims, and any 502(h) Claims.

"**Non-Voting Release Opt-Out Form**" means the form approved in the Disclosure Statement Order that may be used by a party-in-interest that is not in a Class entitled to vote to opt out of the third-party release contained in Section 6.05.

DM_US 192080091-6.114791.0011

"**Other Priority Claim**" means any Claim other than an Administrative Claim or Priority Tax Claim that is entitled to priority in right of payment under section 507(a) of the Bankruptcy Code.

"**Person**" means a "person" as such term is defined in section 101(41) of the Bankruptcy Code.

"**Petition Date**" means December 15, 2020, the date upon which the Chapter 11 petition of the Debtor was filed with the Bankruptcy Court.

"**Plan**" means this liquidating plan under Chapter 11 of the Bankruptcy Code, including, without limitation, the exhibits, appendices, and schedules hereto to be filed with the Plan Supplement, as such may be altered, amended, or otherwise modified from time to time.

"**Plan Proponent**" means the Debtor.

"**Plan Settlements**" means those settlements as may be incorporated in the Plan as set forth in Section 5.37 of the Plan, including those set forth in the Plan Supplement, if any.

"**Plan Supplement**" means the supplemental documents, schedules, and exhibits to the Plan, to be filed by the Debtor no later than the Plan Supplement Filing Date, containing substantially final forms of, among other things, a schedule of rejected Executory Contracts and unexpired leases, a list of retained Causes of Action, the identity of the Liquidation Trustee, the Liquidation Trust Agreement, and the Plan Settlements. The Debtor shall have the right to amend all the documents contained in, and exhibits to, the Plan Supplement through the Effective Date.

"**Plan Supplement Filing Date**" means the last date by which forms of the exhibits to the Plan shall be filed with the Bankruptcy Court, which date shall be not later than seven (7) days prior to the date of commencement of the Confirmation Hearing.

"**Post-Effective Date Notice List**" means the list, created pursuant to Section 10.14 of the Plan, of persons who desire to receive notices after the Effective Date of the Plan.

"**Preserved Claims**" means all Causes of Action that are preserved pursuant to this Plan the Disclosure Statement, or any other document filed in the Chapter 11 Case.

"**Priority Claim**" means any Claim entitled to priority pursuant to section 507(a) of the Bankruptcy Code, other than (a) an Administrative Claim, or (b) a Priority Tax Claim.

"**Priority Tax Claim**" means any Claim entitled to priority pursuant to sections 502(i) and 507(a)(8) of the Bankruptcy Code.

"**Pro Rata**" means the proportion that the amount of a Claim in a particular Class bears to the aggregate amount of all Claims (including Disputed Claims but excluding Disallowed Claims) in such Class.

"**Professional Fees**" means any unpaid fees and expenses of Professionals, as such fees and expenses are allowed by the Bankruptcy Court.

16

"**Professional Fee Claim**" means a Claim for compensation, indemnification, or reimbursement of expenses pursuant to sections 328, 330, 331, or 503(b) of the Bankruptcy Code in connection with the Chapter 11 Case incurred on or after the Petition Date and prior to the Effective Date.

"**Professionals**" mean the attorneys, accountants, financial advisors, and other professionals whose retention in the Chapter 11 Case has been approved by the Bankruptcy Court pursuant to sections 327, 328, or 1103 of the Bankruptcy Code.

"**Proof of Claim**" means a Proof of Claim Filed against the Debtor in the Chapter 11 Case on or before the applicable Bar Date.

"**Purchase Agreement**" means that certain purchase and sale agreement between the Debtor and the Buyer annexed to the Sale Order.

"**Released Party**" means each of the following in its capacity as such: (a) the Debtor's current Professionals; (b) the Committee, the Committee Members, and the Committee's Professionals; and (c) the Secured Lender and the Bondholders and their respective predecessors, successors, assigns, agents, principals, officers, directors, managers, members, employees, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, and other professionals; provided that, for the avoidance of doubt, each of the Debtor's current and former affiliates, subsidiaries, and any other related parties, and the current and former directors, officers, managers, and members of the Debtor and/or its current and former affiliates, subsidiaries, and any other related parties are not Released Parties for purposes of this Plan.

"**Releasing Party**" means each of the following in its capacity as such: (a) any party-in-interest that does not elect to opt out of the release by checking the box on its timely submitted Non-Voting Release Opt-Out Form; (b) all holders of Claims and Interests who vote to accept the Plan and do not elect on their Ballot to opt out of the third-party release contained in Section 6.05 by checking the box on its timely submitted Ballot; and (c) with respect to each of the foregoing entities in clauses (a) through (c), such entity's current and former managed and controlled affiliates, and such entity's and its affiliates' subsidiaries, officers, directors, managers, principals, members, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, and other professionals.

"**Sale**" means the Sale Transaction approved by the Sale Order.

"**Sale Order**" means the order of the Bankruptcy Court approving the Sale Transaction, dated January 25, 2022, filed at Docket No. 1003.

"**Sale Proceeds**" means the proceeds received by the Debtor from the Sale Transaction.

"**Sale Transaction**" means the transaction between the Debtor and the Buyer pursuant to which the Debtor sold substantially all of its tangible assets to the Buyer free and clear of all Liens, Claims, Interests, and encumbrances pursuant to sections 363 and 1123 of the Bankruptcy Code, as set forth in the Purchase Agreement and the Sale Order.

"**Schedules**" means, unless otherwise specified, the respective schedules of assets and liabilities, the list of holders of Interests, and the statements of financial affairs filed by the Debtor in accordance with section 521 of the Bankruptcy Code and the Bankruptcy Rules, as such schedules and statements have been or may be supplemented or amended on or prior to the Confirmation Date.

"**Secured Claim**" means a Claim that is secured by a Lien on any Asset of the Debtor, or right of setoff, which Lien or right of setoff, as the case may be, is valid, perfected, and enforceable under applicable law and is not subject to avoidance under the Bankruptcy Code or applicable nonbankruptcy law, but only to the extent of the value, pursuant to section 506(a) of the Bankruptcy Code, of any interest of the holder of the Claim in property of the Estate securing such Claim. Nothing herein revives or preserves any Lien on property sold free and clear of interests in such property in the Sale Transaction.

"**Secured Lender**" means the Bond Trustee on behalf of the Bondholders.

"**Secured Lender Prepetition Claim**" means the Debtor's prepetition obligation to the Secured Lender in the amount of $112,681,255.67 as set forth in Claim No. 60, which arises from a loan of the proceeds of the Series 2014 Knoxville Bonds under the Series 2014 Note.

"**Secured Lender Claims Distribution**" means all Cash from the Sale Proceeds, including the Distribution made under the Distribution Order, less the Administrative and Priority Claims Reserve, the Liquidation Trust Funding Reserve, and the GUC Liquidation Trust Pool.

"**Series 2014 Knoxville Bonds**" means revenue bonds issued in the amount of $129,595,000 by the Knoxville Issuer in two separate series.

"**Series 2014 Note**" means the Series 2014 Note issued pursuant to the Master Trust Indenture.

"**Settlement Payment**" means a one-time, lump-sum confirmation payment of $250,000 from the Debtor carved out of the Secured Lender's Collateral

"**Subordinated Claims**" means a Claim subject to subordination under section 510(b) of the Bankruptcy Code, including, without limitation, any Claim for or that arises from the rescission of a purchase, sale, issuance, or offer of a security of the Debtor, or for damages arising from the purchase or sale of such a security, or for reimbursement, indemnification, or contribution allowed under section 502 of the Bankruptcy Code on account of such Claim.

"**Supplemental Administrative Claim Bar Date**" shall have the meaning set forth in Section 2.02.

"**Tax Code**" means the Internal Revenue Code of 1986, as amended from time to time.

"**Tort Claims**" means any and all claims of the Debtor based on any tort, including but not limited to any such D&O Claims.

"**Unimpaired**" means any Class of Claims or Interests that is not Impaired within the meaning of section 1124 of the Bankruptcy Code.

"**Unsecured Claim**" means a Claim that is not a Secured Claim.

"**US Trustee**" means the office of the United States Trustee for the Middle District of Tennessee.

"**US Trustee Fees**" means all fees and charges assessed against the Estate by the US Trustee and due pursuant to section 1930 of title 28 of the United States Code.

"**Voting Deadline**" means January 27, 2023, at 5:00 p.m., prevailing Central time.

**Section 1.02    Other Terms**. Any capitalized term used in the Plan and not defined herein that is used in the Bankruptcy Code or Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or Bankruptcy Rules.

**Section 1.03    Rules of Construction**. The meanings set forth herein shall be equally applicable to the singular and plural forms of the terms defined, and pronouns stated in the masculine, feminine, or neutral gender shall include the masculine, feminine, and neutral gender. Unless otherwise stated, the words "herein," "hereof," "hereto," "hereunder," and other similar words refer to the Plan as a whole and not to any particular article, section, subsection, clause, paragraph, or portion contained therein. All of the definitions and provisions contained in this Article I are and shall be regarded as integral, substantive, and operative provisions of the Plan. The headings in the Plan are for convenience of reference only and shall not limit or otherwise affect the provisions hereof. Except as otherwise provided, any references to the Effective Date shall mean the Effective Date or as soon as reasonably practicable thereafter. The rules of construction set forth in section 102 of the Bankruptcy Code shall apply to all of the provisions of the Plan.

**Section 1.04    Exhibits, Supplements, Appendices, and Schedules**. All exhibits, supplements, appendices, and schedules to the Plan, including those filed with the Plan Supplement, are incorporated into and are a part of the Plan as if set forth herein. To the extent that any exhibit, schedule, or Plan Supplement is inconsistent with the terms of the Plan, unless otherwise ordered by the Bankruptcy Court, the Plan shall control.

**Section 1.05    Controlling Document**. The provisions of the Plan and of the Confirmation Order shall be construed in a manner consistent with each other so as to effect the purposes of each; provided, that, if there is determined any inconsistency between a Plan provision and a provision of the Confirmation Order, the Confirmation Order provision shall govern and such provision shall be deemed a modification of the Plan and shall control and take precedence.

# ARTICLE II

# TREATMENT OF UNCLASSIFIED CLAIMS

**Section 2.01    Administrative Claims**. Subject to the provisions of this Plan and except to the extent the Debtor or the Liquidation Trustee, as applicable, and the holder of an Allowed

19

Administrative Claim agree to different treatment, the Liquidation Trustee shall pay, in full satisfaction and release of such Claim, to each holder of an Allowed Administrative Claim, Cash, in an amount equal to such Allowed Administrative Claim, on the later of (i) the Effective Date and (ii) the first Business Day after the date that is thirty (30) calendar days after the date on which such Administrative Claim becomes an Allowed Administrative Claim, or as soon thereafter as is practicable. Allowed Administrative Claims shall be paid (x) *first*, from the funds in the Administrative and Priority Claims Reserve, and (y) *second*, from Available Cash. For the avoidance of doubt, Professional Fee Claims shall be Allowed Administrative Claims.

Subject to the Administrative Claims Bar Date Order and the provisions of this Plan, except with respect to Professional Fee Claims and US Trustee Fees, holders of Administrative Claims who were required to file a request for payment of such Claims and who did not file such requests by the Administrative Claim Bar Date or the Supplemental Administrative Claim Bar Date, shall be forever barred from asserting such Claims against the Debtor or its property, and the holder thereof shall be enjoined from commencing or continuing any action, employment of process or act to collect, offset, or recover such Administrative Claim.

The Debtor or the Liquidation Trustee, as applicable, may settle Administrative Claims without further Bankruptcy Court approval. The Debtor or the Liquidation Trustee, as applicable may also choose to object to any Administrative Claim no later than one hundred and eighty (180) days from the Supplemental Administrative Claim Bar Date, subject to extensions by the Bankruptcy Court, agreement in writing of the parties, or on motion of a party-in-interest approved by the Bankruptcy Court. Unless the Debtor, the Liquidation Trustee, or other party with standing, as applicable, objects to a timely filed and properly served Administrative Claim, such Administrative Claim will be deemed Allowed in the amount requested. If the Debtor or the Liquidation Trustee, as applicable, objects to an Administrative Claim, the parties may confer to try to reach a settlement and, if no settlement is reached, the Bankruptcy Court will determine whether such Administrative Claim should be Allowed and, if so, in what amount.

### Section 2.02   Supplemental Administrative Claim Bar Date.

(a)      **Supplemental Administrative Claim Bar Date Provisions**. Except as provided below for (i) Professionals requesting compensation or reimbursement for Professional Fee Claims, and (ii) US Trustee Fees, requests for payment of Administrative Claims from the period from September 24, 2022 through the Effective Date must be filed no later than thirty (30) days after notice of entry of the Confirmation Order is filed with the Bankruptcy Court or such later date as may be established by order of the Bankruptcy Court. Holders of Administrative Claims who are required to file a request for payment of such Claims and who do not file such requests by the applicable Bar Date, shall be forever barred from asserting such Claims against the Debtor or its property, and the holder thereof shall be enjoined from commencing or continuing any action, employment of process or act to collect, offset, or recover such Administrative Claim.

(b)      **Professional Fee Claim Bar Date**. All Professionals or other Persons requesting compensation or reimbursement of Professional Fee Claims for services rendered for or on behalf of the Debtor and its Estate before the Effective Date (including compensation requested by any Professional or other entity for making a substantial contribution in the Chapter 11 Case) shall file an application for final allowance of compensation and reimbursement of expenses no later than

sixty (60) days after the Effective Date (the "**Fee Claim Deadline**"). Objections to applications of Professionals or other entities for compensation or reimbursement of expenses must be filed no later than fourteen (14) days after any such application. All compensation and reimbursement of expenses allowed by the Bankruptcy Court shall be paid by the Liquidation Trustee to the applicable Professional or other entities requesting compensation or reimbursement of Professional Fee Claims as soon as is practicable after any such Professional Fee Claims are allowed. Each Professional or other Person that intends to seek payment on account of a Professional Fee Claim shall provide the Debtor with a statement, by no later than the Effective Date, of the amount of estimated unpaid fees and expenses accrued by such Professional up to the date of such statement, the amount of fees and expenses that each such Professional expects to incur from such date through the Effective Date, and the amount of fees and expenses that each such Professional expects to incur from such date in connection with the preparation and prosecution of each such Professional's final fee application.

(c) **US Trustee Fees**. The Debtor or the Liquidation Trustee (as applicable) shall pay all US Trustee Fees, in accordance with the terms of the Plan. Any US Trustee Fees that may be owed by the Debtor after the Confirmation Date shall be paid by the Debtor or, if the Debtor has been dissolved, shall be deemed satisfied by the Debtor's payment of US Trustee fees on its disbursement of funds to the Liquidation Trust and GUC Liquidation Trust on the Effective Date. Following disbursement of funds to the Liquidation Trust and GUC Liquidation Trust, no further payments will be owed to the US Trustee.

**Section 2.03   Priority Tax Claims**. Except to the extent the Debtor or the Liquidation Trustee, as applicable, and the holder of an Allowed Priority Tax Claim agree to a different and less favorable treatment, the Liquidation Trustee shall pay, in full satisfaction and release of such Claim, to each holder of a Priority Tax Claim, Cash, in an amount equal to such Allowed Priority Tax Claim, on the later of: (a) the Effective Date and (b) the first Business Day after the date that is thirty (30) calendar days after the date on which such Priority Tax Claim becomes an Allowed Priority Tax Claim, or as soon thereafter as is practicable.

## ARTICLE III

## CLASSIFICATION AND
## TREATMENT OF CLASSIFIED CLAIMS AND INTERESTS

**Section 3.01   General Notes on Classification and Treatment of Classified Claims and Interests**. Pursuant to sections 1122 and 1123 of the Bankruptcy Code, Claims and Interests (other than Claims arising under sections 507(a)(2) or 507(a)(8) of the Bankruptcy Code, which Claims do not require classification pursuant to section 1123(a) of the Bankruptcy Code and are receiving the treatment set forth in Article II) are classified for all purposes, including, without limitation, voting, confirmation, and distribution pursuant to the Plan, as set forth herein. A Claim or Interest shall be deemed classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class, and shall be deemed classified in a different Class to the extent that any remainder of such Claim or Interest qualifies within the description of such different Class.

**Section 3.02    Special Provision Governing Unimpaired Claims**. Except as otherwise provided in the Plan, nothing under the Plan shall affect the rights of the Debtor, Liquidation Trustee, or GUC Liquidation Trustee, as applicable, in respect of any Unimpaired Claims, including all rights in respect of legal and equitable defenses to, or setoffs or recoupments against, any such Unimpaired Claims.

**Section 3.03    Classification and Treatment of Classified Claims and Interests**.

| Class | Treatment | Entitled to Vote |
|---|---|---|
| Class 1 Other Priority Claims | Unimpaired | No (Deemed to accept) |
| Class 2 Secured Tax Claims | Unimpaired | No (Deemed to accept) |
| Class 3 Secured Lender Prepetition Claim | Impaired | Yes (Entitled to vote to accept or reject) |
| Class 4 Other Secured Claims | Impaired | Yes (Entitled to vote to accept or reject) |
| Class 5 GUC Settlement Claims | Impaired | Yes (Entitled to vote to accept or reject) |
| Class 6 Insured Claims | Impaired | Yes (Entitled to vote to accept or reject) |
| Class 7 Bond Deficiency Claims | Impaired | Yes (Entitled to vote to accept or reject) |
| Class 8 Non-Settling General Unsecured Claims | Impaired | Yes (Entitled to vote to accept or reject) |
| Class 9 Insider Claims | Impaired | No (Deemed to reject) |
| Class 10 Intercompany Claims | Impaired | No (Deemed to reject) |
| Class 11 Subordinated Claims | Impaired | No (Deemed to reject) |
| Class 12 Interests | Impaired | No (Deemed to reject) |

(a)    **Class 1: Other Priority Claims**

(i)    Class 1 Treatment. Except to the extent that a holder of an Allowed Other Priority Claim agrees to a less favorable treatment of such Claim, in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed Other Priority Claim, at the sole option of the Debtor or the Liquidation Trustee,

22

each holder of an Allowed Other Priority Claim shall receive: (A) Cash in an amount equal to the amount of such Allowed Other Priority Claim from the Administrative and Priority Claims Reserve on the later of (1) the Effective Date, and (2) for Claims in Class 1 that were Disputed Claims and thereafter became Allowed Other Priority Claims, thirty (30) days following the date upon which such Claims became Allowed Other Priority Claims, or as soon thereafter as is practicable, (B) such other treatment so as to render such holder's Allowed Other Priority Claim Unimpaired.

(ii)     Class 1 Voting. Holders of Allowed Other Priority Claims in Class 1 are not Impaired under the Plan. Each holder of an Allowed Other Priority Claim is conclusively presumed to accept the Plan under section 1126(f) of the Bankruptcy Code and is therefore not entitled to vote to accept or reject the Plan in its capacity as a holder of such Claim.

(b)     **Class 2: Secured Tax Claims**

(i)     Class 2 Treatment. Except to the extent that the holder of an Allowed Class 2 Secured Tax Claim agrees to less favorable treatment of its Allowed Class 2 Secured Claim, in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed Class 2 Secured Claim, each such holder shall receive, at the Liquidation Trustee's option, as applicable: (a) payment in accordance with § 1129 of the Bankruptcy Code or (b) surrender of the collateral that secured such Allowed Class 2 Secured Claim prior to the Effective Date. The amount, validity, extent, value, and priority of the Allowed 2 Claim under §§ 505, 506, and 511 of the Bankruptcy Code will be determined by the Bankruptcy Court after the Effective Date. Any Deficiency Claim or other Unsecured Claim of a holder of Class 2 Claim shall be treated as a Class 8 Non-Settling General Unsecured Claim.

(ii)     Class 2 Voting. Holders of Allowed Claims in Class 2 are not Impaired under the Plan. Each holder of an Allowed Secured Claim is conclusively presumed to accept the Plan under section 1126(f) of the Bankruptcy Code and is therefore not entitled to vote to accept or reject the Plan in its capacity as a holder of such Claim.

(c)     **Class 3: Secured Lender Prepetition Claim**. As a settlement under Bankruptcy Rule 9019, which settlement is conditioned on the occurrence of the Effective Date, the holders of Class 3 Secured Lender Prepetition Claim and the Debtor have agreed as follows:

(i)     Class 3 Allowance. The Secured Lender Prepetition Claim is Allowed pursuant to section 506(a) of the Bankruptcy Code in the aggregate amount of $112,681,255.67.

(ii)     Class 3 Treatment. In full and final satisfaction, settlement, release, and discharge of and in exchange for each Secured Lender Prepetition Claim and any and all claims that could be and have been asserted by the Secured Lender and the holders of Secured Lender Prepetition Claims, each holder of an Allowed Secured Lender Prepetition Claim shall be entitled to receive (a) its Pro Rata Share, as reflected in the books and records of the Secured Lender, of the amount of the Secured Lender Claims Distribution, and (b) treatment as a Released Party under the Plan. The Secured Lender Prepetition Claims are Allowed Claims under the Plan. For the avoidance of doubt, the satisfaction, settlement, release and discharge of the Secured Lender Prepetition Claim does not satisfy, settle, or release the Deficiency Claims of holders of Secured Lender Prepetition Claims, which are expressly preserved. Any Deficiency Claim or other Unsecured Claim of a holder of a Class 3 Claim shall be treated in Class 7 as a Bond Deficiency Claim.

(iii)     Class 3 Voting. Class 3 is Impaired under the Plan. Each holder of an Allowed Secured Lender Prepetition Claim is entitled to vote to accept or reject the Plan.

(d)     **Class 4: Other Secured Claims**

(i)     Class 4 Treatment. Provided that the holder of a Class 4 Secured Claim has not yet been paid, on the later of (A) the Effective Date and (B) for Claims in Class 4 that were Disputed Claims on the Effective Date and have thereafter become Allowed Secured Claims, immediately following the date upon which such Claims became Allowed Secured Claims, or as soon thereafter as is practicable, holders of each such Allowed Secured Claim shall receive in full and final satisfaction, settlement, release, and discharge of and in exchange for each such Allowed Secured Claim (1) Cash in an amount not to exceed the amount of such Allowed Secured Claim, (2) the Collateral securing such Allowed Secured Claim (in which case any Deficiency Claim shall become a Class 8 Non-Settling General Unsecured Claim), or (3) such other treatment as may be agreed upon by the Debtor or the Liquidation Trustee and the holder of such Allowed Secured Claim, or as may otherwise be provided in the Bankruptcy Code, provided that the holder of such Allowed Secured Claim will not receive more than the value of the Collateral securing such Claim.

(ii)     Class 4 Voting. Holders of Allowed Claims in Class 4 are Impaired under the Plan. Each holder of an Allowed Other Secured Claim is entitled to vote to accept or reject the Plan.

(e)     **Class 5: GUC Settlement Claims**

(i)     <u>Class 5 Treatment</u>. In full and final satisfaction, settlement, release, and discharge of and in exchange for each Class 5 GUC Settlement Claim, such holder of each such Allowed GUC Settlement Claim shall receive its Pro Rata share of uncertificated beneficial interests in the GUC Liquidation Trust representing the right of each holder of an Allowed GUC Settlement Claim to receive Distributions from the GUC Liquidation Trust in accordance with the Plan and the GUC Liquidation Trust Agreement.

(ii)    <u>Class 5 Voting</u>. Class 5 is Impaired under the Plan. Each holder of an Allowed GUC Settlement Claim is entitled to vote to accept or reject the Plan.

(f)     **Class 6: Insured Claims**

(i)     <u>Class 6 Treatment</u>. In full and final satisfaction, settlement, release, and discharge of and in exchange for each Class 6 Insured Claim, such holder of each such Allowed Insured Claim shall recover only from the available insurance and the Debtor shall be discharged to the extent of any such excess.

(ii)    <u>Class 6 Voting</u>. Class 6 is Impaired under the Plan. Each holder of an Allowed Insured Claim is entitled to vote to accept or reject the Plan.

(g)     **Class 7: Bond Deficiency Claims**

(i)     <u>Class 7 Treatment</u>. In full and final satisfaction, settlement, release, and discharge of and in exchange for each Class 7 Bond Deficiency Claim, such holder of each such Allowed Bond Deficiency Claim shall receive its Pro Rata share of uncertificated beneficial interests in the Liquidation Trust representing the right of each holder of a Bond Deficiency Claim to receive Distributions from the Liquidation Trust in accordance with the Plan and the Liquidation Trust Agreement.

(ii)    <u>Class 7 Voting</u>. Class 7 is Impaired under the Plan. Each holder of an Allowed Bond Deficiency Claim is entitled to vote to accept or reject the Plan.

(h)     **Class 8: Non-Settling General Unsecured Claims**

(i)     <u>Class 8 Treatment</u>. In full and final satisfaction, settlement, release, and discharge of and in exchange for each Class 8 Non-Settling General Unsecured Claim, such holder of each such Allowed Non-Settling General Unsecured Claim shall receive its

Pro Rata share of uncertificated beneficial interests in the Liquidation Trust representing the right of each holder of a Non-Settling General Unsecured Claim to receive Distributions from the Liquidation Trust in accordance with the Plan and the Liquidation Trust Agreement.

(ii)    Class 8 Voting. Class 8 is Impaired under the Plan. Each holder of an Allowed Non-Settling General Unsecured Claim is entitled to vote to accept or reject the Plan.

(i)    **Class 9: Insider Claims**

(i)    Class 9 Treatment. Holders of Insider Claims shall not receive any Distributions on account of such Insider Claims.

(ii)    Class 9 Voting. Insider Claims are Impaired under the Plan, and the holders of and the holders of Impaired Claims are deemed to reject the Plan under section 1126(g) of the Bankruptcy Code and are therefore not entitled to vote to accept or reject the Plan in their capacity as a holder of such Claims.

(j)    **Class 10: Intercompany Claims**

(i)    Class 10 Treatment. Holders of Intercompany Claims, other than Allowed Administrative Claims, shall not receive any Distributions on account of such Intercompany Claims.

(ii)    Class 10 Voting. Intercompany Claims are Impaired under the Plan, and the holders of Intercompany Claims are deemed to reject the Plan under section 1126(g) of the Bankruptcy Code and are therefore not entitled to vote to accept or reject the Plan in their capacity as a holder of such Claims.

(k)    **Class 11: Subordinated Claims**

(i)    Class 11 Treatment. The holders of Subordinated Claims shall not receive or retain any property under the Plan on account of such Claims.

(ii)    Class 11 Voting. Subordinated Claims are Impaired under the Plan, and the holders of Subordinated Claims are deemed to reject the Plan under section 1126(g) of the Bankruptcy Code and are therefore not entitled to vote to accept or reject the Plan in their capacity as a holder of such Claims.

DM_US 192080091-6.114791.0011

    (l)    **Class 12: Interests**

    (i)    <u>Class 12 Treatment</u>. On the Effective Date, Interests shall be deemed cancelled, and the holders of Interests shall not receive or retain any property under the Plan on account of such Interests.

    (ii)    <u>Class 12 Voting</u>. Interests are Impaired under the Plan, and the holders of Interests are deemed to reject the Plan under section 1126(g) of the Bankruptcy Code and are therefore not entitled to vote to accept or reject the Plan in their capacity as a holder of such Interests.

## ARTICLE IV

## VOTING AND DISTRIBUTIONS UNDER THE PLAN

    <u>**Section 4.01**</u>    **Voting of Claims and Interests**. Only the Class 3 Secured Lender Prepetition Claim, Class 4 Other Secured Claims, Class 5 GUC Settlement Claims, Class 6 Insured Claims, Class 7 Bond Deficiency Claims, and Class 8 Non-Settling General Unsecured Claims, are Impaired and entitled to vote to accept or reject the Plan. Class 9 Insider Claims, Class 10 Intercompany Claims, Class 11 Subordinated Claims, and Class 12 Interests are Impaired and are presumed to reject the Plan. Unimpaired Classes are presumed to have accepted the Plan. All classes of Claims and Interests are permitted to object to the Plan or the adequacy of the Disclosure Statement. Objections to the adequacy of the Disclosure Statement and objections to the Plan must be filed not later than January 27, 2023, at 5:00 p.m. Central Time.

    <u>**Section 4.02**</u>    **Elimination of Vacant Classes**. Any Class of Claims or Interests that does not have a holder of an Allowed Claim or Allowed Interest or a Claim or Interest temporarily Allowed by the Bankruptcy Court as of the date of the Confirmation Hearing, shall be deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

    <u>**Section 4.03**</u>    **Distributions Under the Plan**. Whenever any Distribution to be made pursuant to the Plan shall be due on a day other than a Business Day, such Distribution shall instead be made on the immediately succeeding Business Day and shall be deemed to have been made on the date due. As of the close of business on the Confirmation Date (the "**Distribution Record Date**"), there shall be no further changes in the record holders of the Claims for purposes of Distributions under the Plan. Neither the Debtor, the Liquidation Trustee, nor the GUC Liquidation Trustee shall have any obligation to recognize any transfer of Claims occurring after the Confirmation Date. The sequencing and timing of Distributions shall be at the sole discretion of the Liquidation Trustee or GUC Liquidation Trustee, as applicable. The Distribution Record Date shall not apply to the bonds or any securities of the Debtor deposited with DTC, the holders of which shall receive a distribution in accordance with Article IV of the Plan and, as applicable, the customary procedures of DTC.

**Section 4.04   Distribution Deadlines**. Any Distribution to be made by the Liquidation Trustee or GUC Liquidation Trustee, as applicable, pursuant to the Plan shall be deemed to have been timely made if made within thirty (30) days after the time therefor specified in the Plan or such other written agreements between the Liquidation Trustee or GUC Liquidation Trustee, as applicable, and the holder of the relevant Claim, or as soon as practicable thereafter. No interest shall accrue or be paid with respect to any Distribution as a consequence of such Distribution not having been made on the date specified therefor herein.

**Section 4.05   Manner of Payment Under the Plan**. Unless the Person receiving a payment agrees otherwise, any payment in Cash to be made by the Debtor, the Liquidation Trustee, or the GUC Liquidation Trustee, as applicable, shall be made by check drawn on a domestic bank or by automated clearing house transfer.

**Section 4.06   De Minimis Distributions**. Neither the Debtor, the Liquidation Trustee, nor the GUC Liquidation Trustee, as applicable, shall be required to make any Cash payment of less than one hundred dollars ($100.00) with respect to any Claim unless a request therefor is made in writing to the Liquidation Trustee or GUC Liquidation Trustee, as applicable, on or before sixty (60) days after the Effective Date. Any de minimis Distributions not subject to a timely request for payment shall revert to the Liquidation Trust or GUC Liquidation Trust, as applicable.

**Section 4.07   Unclaimed Property**. All Distributions to any holder of an Allowed Claim shall be made at the Distribution Address unless the Debtor, the Liquidation Trustee, and/or the GUC Liquidation Trustee, as applicable, have been notified in writing of a change of address. If any Distribution to any holder of an Allowed Claim is returned as undeliverable, no further Distributions to such holder shall be made unless and until the Liquidation Trustee or GUC Liquidation Trustee, as applicable, is notified of such holder's then current address, at which time all eligible missed Distributions shall be made to such holder, without interest. All demands for undeliverable Distributions shall be made on or before sixty (60) days after the date such undeliverable Distribution was initially made. Thereafter, the amount represented by such undeliverable Distribution shall irrevocably revert to the Liquidation Trust or GUC Liquidation Trust, as applicable, and be treated as Available Cash by the Liquidation Trust. Any entitlement of any holder of any Claim to such Distributions shall be extinguished and forever barred.

**Section 4.08   Time Bar to Cash Payments**. Checks issued by the Liquidation Trust or the GUC Liquidation Trust, as applicable, in respect of Allowed Claims shall be null and void if not negotiated within sixty (60) days after the date of issuance thereof. Requests for reissuance of any check shall be in writing to the Liquidation Trustee or the GUC Liquidation Trustee, as applicable, by the holder of the Allowed Claim to whom such check originally was issued. Any such written claim in respect of such a voided check must be received by the Liquidation Trustee or GUC Liquidation Trustee, as applicable, on or before sixty (60) days after the expiration of the sixty 60-day period following the date of issuance of such check. Thereafter, the amount represented by such voided check shall be treated as Available Cash by the Liquidation Trust. Any Claim in respect of such voided check shall be discharged and forever barred from assertion against the Debtor, the Estate, the Liquidation Trust, or the GUC Liquidation Trust.

## ARTICLE V

## IMPLEMENTATION OF PLAN

<u>**Section 5.01**</u>  **Creation of the Liquidation Trust and Appointment of Liquidation Trustee**.

(a)  **Creation of Liquidation Trust**. On or prior to the Effective Date, the Liquidation Trustee and the Debtor shall execute the Liquidation Trust Agreement. The Liquidation Trust shall become effective on the Effective Date. On the Effective Date, the Liquidation Trust shall be deemed to be valid, binding, and enforceable in accordance with the terms and provisions of the Plan and the Liquidation Trust Agreement. After the Effective Date, the Liquidation Trust Agreement may be amended in accordance with its terms without further order of the Bankruptcy Court. The Liquidation Trust Agreement shall be satisfactory in form and substance to the Debtor and the Secured Lender.

(b)  **Purpose of the Liquidation Trust**. The Liquidation Trust shall be established for the sole purpose of liquidating and distributing its assets, with no objective to continue or engage in the conduct of a trade or business. It is intended that the Liquidation Trust be classified for federal income tax purposes as a "liquidating trust" within the meaning of Treasury Regulation section 301.7701-4(d).

(c)  **Transfer of Liquidation Trust Assets to the Liquidation Trust**. As of the Effective Date, pursuant to the provisions of sections 1141(b) and (c) of the Bankruptcy Code, the Debtor and the Estate shall preserve, transfer, and assign all of its right, title, and interest in and to all of the Liquidation Trust Assets, which shall automatically vest in the Liquidation Trust free and clear of all Claims, Liens, encumbrances, charges, Interests, and other interests except the Liens and Claims of the Secured Lender and subject to the Allowed Bond Deficiency Claims and Allowed Class 8 Non-Settling General Unsecured Claims of the holders of Liquidation Trust Interests as set forth in the Plan and the expenses of the Liquidation Trust as set forth herein and in the Liquidation Trust Agreement.

(d)  **Appointment of the Liquidation Trustee**. On the Effective Date, the Liquidation Trustee shall be deemed the Estate's representative pursuant to section 1123 of the Bankruptcy Code and shall have all powers, authority, and responsibilities specified in the Plan, including, without limitation, the powers of a trustee under sections 704 and 1106 of the Bankruptcy Code and Rule 2004 of the Bankruptcy Rules.

(e)  **Governance of Liquidation Trust**. The Liquidation Trust shall be governed and administered by the Liquidation Trustee subject to the terms of the Plan and the Liquidation Trust Agreement. The Liquidation Trustee shall direct all litigation brought on behalf of the Liquidation Trust.

(f)  **Tax Treatment**. Except to the extent allocable to Disputed Claims, consistent with the principles of Revenue Procedure 94-45, 1994-2 C.B. 684, as of the Effective Date, for federal income tax purposes, (i) the Debtor will be deemed to transfer the Liquidation Trust Assets to the holders of Allowed Bond Deficiency Claims and Allowed Class 8 Non-Settling General

29

Unsecured Claims in proportion to their respective beneficial interests in the Liquidation Trust, (ii) the holders of Allowed Bond Deficiency Claims and Allowed Class 8 Non-Settling General Unsecured Claims will be deemed to transfer such Assets to the Liquidation Trust, (iii) the Liquidation Trust will be treated as a "liquidating trust," as defined in Treasury Regulation section 301.7701-4(d), and as a "grantor trust" within the meaning of Internal Revenue Code sections 671-679, and (iv) the holders of Allowed Bond Deficiency Claims and Allowed Class 8 Non-Settling General Unsecured Claims will be treated as the "grantors" of the Liquidation Trust.

**Section 5.02** **Rights, Powers, and Duties of the Liquidation Trust and the Liquidation Trustee**. The Liquidation Trustee will act for the benefit of holders of Liquidation Trust Interests in a fiduciary capacity and shall have comparable authority as a bankruptcy trustee of the Debtor, as the exclusive representative of the Estate under section 1123(a)(5)(B) of the Bankruptcy Code or any corresponding federal or state laws with respect to the Liquidation Trust Assets and shall succeed to all of the Debtor's and the Estate's rights with respect thereto, subject to the provisions of the Plan and the Liquidation Trust Agreement. The powers, rights, and duties of the Liquidation Trustee shall arise on the Effective Date and shall include, without limitation:

(a)     having the power and authority to collect, liquidate, and distribute the Liquidation Trust Assets for the benefit of holders of Liquidation Trust Interests holding Allowed Bond Deficiency Claims and Allowed Class 8 Non-Settling General Unsecured Claims;

(b)     investing Cash in accordance with section 345 of the Bankruptcy Code, and withdrawing and making Distributions of Cash to holders of Liquidation Trust Interests holding Allowed Bond Deficiency Claims and Allowed Class 8 Non-Settling General Unsecured Claims and paying taxes and other obligations incurred by the Liquidation Trustee in connection with winding down the Estate, from the Administrative and Priority Claims Reserve, Liquidation Trust Funding Reserve, and Available Cash in accordance with the Plan;

(c)     engaging attorneys, consultants, agents, employees, and any other professional persons to assist the Liquidation Trustee with respect to the Liquidation Trustee's responsibilities;

(d)     executing and delivering all documents and taking all actions necessary to consummate the Plan and liquidate the Liquidation Trust Assets;

(e)     coordinating the turnover of property, if any, subject to rejected Executory Contracts or abandonment or liquidation of any Liquidation Trust Assets;

(f)     coordinating the collection of outstanding accounts receivable not sold to Buyer, if any;

(g)     coordinating the storage, maintenance, and disposition of the Debtor's books and records;

(h)     overseeing compliance with the accounting, finance, and reporting obligations;

(i)     preparing financial statements and US Trustee post-confirmation quarterly reports, and filing such reports on the docket of the Chapter 11 Case until such time as a final decree has been entered;

(j)  overseeing the filing of final tax returns, refund requests, audits, and other corporate dissolution documents, as required;

(k)  performing any additional corporate actions as necessary to carry out the wind up and liquidation of the Estate;

(l)  paying the fees and expenses of the attorneys, consultants, agents, employees, and other professional persons engaged by the Liquidation Trust and to pay all other expenses for winding down the Estate, subject to the terms of the Plan;

(m)  disposing of, and delivering title to others of, or otherwise realizing the value of, all the Liquidation Trust Assets;

(n)  objecting to, compromising, and settling Claims, other than GUC Settlement Claims, without notice or Bankruptcy Court approval unless otherwise required by Section 5.27 of the Plan;

(o)  acting on behalf of the Liquidation Trust in all adversary proceedings and contested matters (including, without limitation, any Cause of Action), then pending or that can be commenced in the Bankruptcy Court and in all actions and proceedings pending or commenced elsewhere, and to settle, retain, enforce, dispute, or adjust any claim and otherwise pursue actions involving the Liquidation Trust Assets that could arise or be asserted at any time under the Bankruptcy Code, unless otherwise waived or relinquished in the Plan;

(p)  implementing and/or enforcing all provisions of the Plan; and

(q)  such other powers as may be vested in or assumed by the Liquidation Trustee pursuant to the Plan, Liquidation Trust Agreement, or other order of the Bankruptcy Court, or as may be needed or appropriate to carry out the provisions of the Plan.

**Section 5.03  Liquidation Trust Interests**. On the Effective Date, each holder of an Allowed Bond Deficiency Claim and Allowed Class 8 Non-Settling General Unsecured Claims shall, by operation of the Plan, receive its Pro Rata share of the Liquidation Trust Interests. Liquidation Trust Interests shall be reserved for holders of Disputed Bond Deficiency Claims and Disputed Class 8 Non-Settling General Unsecured Claims and held by the Liquidation Trustee pending allowance or disallowance of such Claims. No other Person or Entity shall have any interest, legal, beneficial or otherwise, in the Liquidation Trust Assets upon the assignment and transfer of such assets to the Liquidation Trust. As set forth in the Liquidation Trust Agreement, Distributions from the Liquidation Trust on account of Liquidation Trust Interests shall be made from the Liquidation Trust Assets after paying, reserving against or satisfying, among other things, the operating and administrative expenses of the Liquidation Trust, including but not limited to all costs, expenses, and obligations incurred by the Liquidation Trustee (or professionals who may be employed by the Liquidation Trustee in administering the Liquidation Trust) in carrying out their responsibilities under the Liquidation Trust Agreement, or in any manner connected, incidental or related thereto. The Liquidation Trust Interests shall be uncertificated and shall be nontransferable except upon death of the holder or by operation of law. Holders of Liquidation Trust Interests shall have no voting rights with respect to such interests.

**Section 5.04    Implementation**. The Liquidation Trustee will implement the Liquidation Trust in a manner consistent with the terms and conditions set forth in the Plan and the Confirmation Order. On and after the Effective Date, except as otherwise provided in the Plan, the Liquidation Trustee or the Debtor, as applicable, may use, acquire, or dispose of property and compromise or settle any Claims, Interests, or Causes of Action without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

**Section 5.05    Liquidation Trust Accounts**. The Liquidation Trustee shall deposit and maintain any and all funds in one or more segregated accounts for Distribution solely in accordance with the Plan and Liquidation Trust Agreement.

**Section 5.06    Retention of Professionals by Liquidation Trust**. The Liquidation Trustee shall have the right to retain the services of attorneys, accountants, and other professionals that are necessary to assist the Liquidation Trustee in the performance of its duties as Liquidation Trustee or otherwise under this Plan. The reasonable fees and expenses of such professionals and the additional expenses of the Liquidation Trustee incurred in the performance of its duties as Liquidation Trustee under this Plan shall be paid by the Liquidation Trustee from the Liquidation Trust Funding Reserve and shall not be subject to the approval of the Bankruptcy Court.

**Section 5.07    Termination of the Liquidation Trust**. The existence of the Liquidation Trust and the authority of the Liquidation Trustee will commence as of the Effective Date and will remain and continue in full force and effect until the earlier of (a) the date on which all of the Assets are liquidated in accordance with the Plan, the funds in the Liquidation Trust have been completely distributed in accordance with the Plan, all tax returns and other filings or reports have been filed with the appropriate state or federal regulatory authorities, and the order closing the Chapter 11 Case is a Final Order or (b) five (5) years after the date of creation of the Liquidation Trust, unless extended by the Bankruptcy Court as provided in the Liquidation Trust Agreement.

At such time as the Liquidation Trust has been fully administered (i.e., when all things requiring action by the Liquidation Trustee has been done, and the Plan has been substantially consummated) and in all events within sixty (60) days after the Final Distribution Date, the Liquidation Trustee will file an application for approval of his or her final report and the entry of the final decree by the Bankruptcy Court.

**Section 5.08    Resignation or Removal of Liquidation Trustee.** If the Liquidation Trustee resigns or is removed, dies, dissolves, or is incapacitated, the Liquidation Trustee or, as necessary, the Bankruptcy Court, shall designate another Person to become the Liquidation Trustee and thereupon the successor Liquidation Trustee, without further act, shall become fully vested with all of the rights, powers, duties, and obligations of his or her predecessor, including the compensation of the predecessor Liquidation Trustee. No successor Liquidation Trustee hereunder shall in any event have any liability or responsibility for the acts or omissions of any of his or her predecessors.

**Section 5.09    Creation of the GUC Liquidation Trust and Appointment of GUC Liquidation Trustee**.

(a)     **Creation of GUC Liquidation Trust**. On or prior to the Effective Date, the GUC Liquidation Trustee and the Debtor shall execute the GUC Liquidation Trust Agreement. The GUC Liquidation Trust shall become effective on the Effective Date. On the Effective Date, the GUC Liquidation Trust shall be deemed to be valid, binding, and enforceable in accordance with the terms and provisions of the Plan and the GUC Liquidation Trust Agreement. After the Effective Date, the GUC Liquidation Trust Agreement may be amended in accordance with its terms without further order of the Bankruptcy Court. The GUC Liquidation Trust Agreement shall be satisfactory in form and substance to the Committee.

(b)     **Purpose of the GUC Liquidation Trust**. The Liquidation Trust shall be established for the sole purpose of liquidating and distributing the GUC Liquidation Trust Assets, with no objective to continue or engage in the conduct of a trade or business. It is intended that the GUC Liquidation Trust be classified for federal income tax purposes as a "liquidating trust" within the meaning of Treasury Regulation section 301.7701-4(d).

(c)     **Transfer of GUC Liquidation Trust Assets to the GUC Liquidation Trust**. As of the Effective Date, pursuant to the provisions of sections 1141(b) and (c) of the Bankruptcy Code, the Debtor and the Estate shall preserve, transfer, and assign all of its right, title, and interest in and to all of the GUC Liquidation Trust Assets, which shall automatically vest in the GUC Liquidation Trust free and clear of all Claims, Liens, encumbrances, charges, Interests, and other interests, subject only to the Allowed GUC Settlement Claims of the holders of GUC Liquidation Trust Interests as set forth in the Plan and the expenses of the GUC Liquidation Trust as set forth herein and in the GUC Liquidation Trust Agreement.

(d)     **Appointment of the GUC Liquidation Trustee**. On the Effective Date, the GUC Liquidation Trustee shall be appointed.

(e)     **Governance of GUC Liquidation Trust**. The GUC Liquidation Trust shall be governed and administered by the GUC Liquidation Trustee subject to the terms of the Plan and the GUC Liquidation Trust Agreement.

(f)     **Tax Treatment**. Except to the extent allocable to Disputed Claims, consistent with the principles of Revenue Procedure 94-45, 1994-2 C.B. 684, as of the Effective Date, for federal income tax purposes, (i) the Debtor will be deemed to transfer the GUC Liquidation Trust Assets to the holders of Allowed GUC Settlement Claims in proportion to their respective beneficial interests in the GUC Liquidation Trust, (ii) the holders of Allowed GUC Settlement Claims will be deemed to transfer such GUC Liquidation Trust Assets to the GUC Liquidation Trust, (iii) the GUC Liquidation Trust will be treated as a "liquidating trust," as defined in Treasury Regulation section 301.7701-4(d), and as a "grantor trust" within the meaning of Internal Revenue Code sections 671-679, and (iv) the holders of Allowed GUC Settlement Claims will be treated as the "grantors" of the GUC Liquidation Trust.

<u>**Section 5.10**</u>     **Rights, Powers, and Duties of the GUC Liquidation Trust and the GUC Liquidation Trustee**. The GUC Liquidation Trustee will act for the benefit of holders of GUC Liquidation Trust Interests in a fiduciary capacity and shall have comparable authority as a bankruptcy trustee of the Debtor, as the exclusive representative of the Estate under section 1123(a)(5)(B) of the Bankruptcy Code or any corresponding federal or state laws with respect to

the GUC Liquidation Trust Assets and shall succeed to all of the Debtor's and the Estate's rights with respect thereto, subject to the provisions of the Plan and the GUC Liquidation Trust Agreement. The powers, rights, and duties of the GUC Liquidation Trustee shall arise on the Effective Date and shall include, without limitation:

(a)     having the power and authority to collect, liquidate, and distribute the GUC Liquidation Trust Assets for the benefit of holders of GUC Liquidation Trust Interests holding Allowed GUC Settlement Claims;

(b)     investing Cash in accordance with section 345 of the Bankruptcy Code, and withdrawing and making Distributions of Cash to holders of GUC Liquidation Trust Interests holding Allowed GUC Settlement Claims and paying taxes and other obligations incurred by the GUC Liquidation Trustee in connection with administering the GUC Liquidation Trust in accordance with the Plan;

(c)     engaging attorneys, consultants, agents, employees, and any other professional persons to assist the GUC Liquidation Trustee with respect to the GUC Liquidation Trustee's responsibilities;

(d)     objecting to, reconciling, compromising, and settling GUC Settlement Claims without notice or Bankruptcy Court approval unless otherwise required in Section 5.27 of the Plan;

(e)     implementing and/or enforcing all provisions of the Plan; and

(f)     such other powers as may be vested in or assumed by the GUC Liquidation Trustee pursuant to the Plan, GUC Liquidation Trust Agreement, or other order of the Bankruptcy Court, or as may be needed or appropriate to carry out the provisions of the Plan.

**Section 5.11   GUC Liquidation Trust Interests**. On the Effective Date, each holder of an Allowed GUC Settlement Claim shall, by operation of the Plan, receive its Pro Rata share of the GUC Liquidation Trust Interests. GUC Liquidation Trust Interests shall be reserved for holders of Disputed GUC Settlement Claims and held by the GUC Liquidation Trustee pending allowance or disallowance of such Claims. No other Person or Entity shall have any interest, legal, beneficial or otherwise, in the GUC Liquidation Trust Assets upon the assignment and transfer of such assets to the GUC Liquidation Trust. As set forth in the GUC Liquidation Trust Agreement, Distributions from the GUC Liquidation Trust on account of GUC Liquidation Trust Interests shall be made from the GUC Liquidation Trust Assets after paying, reserving against or satisfying, among other things, the operating and administrative expenses of the GUC Liquidation Trust, including but not limited to all costs, expenses, and obligations incurred by the GUC Liquidation Trustee (or professionals who may be employed by the GUC Liquidation Trustee in administering the GUC Liquidation Trust) in carrying out their responsibilities under the GUC Liquidation Trust Agreement, or in any manner connected, incidental or related thereto. The GUC Liquidation Trust Interests shall be uncertificated and shall be nontransferable except upon death of the holder or by operation of law. Holders of GUC Liquidation Trust Interests shall have no voting rights with respect to such interests.

**Section 5.12   Implementation**. The GUC Liquidation Trustee will implement the GUC Liquidation Trust in a manner consistent with the terms and conditions set forth in the Plan and the Confirmation Order. On and after the Effective Date, except as otherwise provided in the Plan, the GUC Liquidation Trustee, may compromise or settle any GUC Settlement Claims without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

**Section 5.13   GUC Liquidation Trust Accounts**. The GUC Liquidation Trustee shall deposit and maintain any and all funds in one or more segregated accounts for Distribution solely in accordance with the Plan and GUC Liquidation Trust Agreement.

**Section 5.14   Retention of Professionals by GUC Liquidation Trust**. The GUC Liquidation Trustee shall have the right to retain the services of attorneys, accountants, and other professionals that are necessary to assist the GUC Liquidation Trustee in the performance of its duties as GUC Liquidation Trustee or otherwise under this Plan. The reasonable fees and expenses of such professionals and the additional expenses of the GUC Liquidation Trustee incurred in the performance of its duties as GUC Liquidation Trustee under this Plan shall be paid by the GUC Liquidation Trustee from the GUC Liquidation Trust Pool and shall not be subject to the approval of the Bankruptcy Court.

**Section 5.15   Termination of the GUC Liquidation Trust**. The existence of the GUC Liquidation Trust and the authority of the GUC Liquidation Trustee will commence as of the Effective Date and will remain and continue in full force and effect until the earlier of (a) the date on which all of the GUC Liquidation Trust Assets are liquidated in accordance with the Plan, the funds in the GUC Liquidation Trust have been completely distributed in accordance with the Plan, all tax returns and other filings or reports have been filed with the appropriate state or federal regulatory authorities, and the order closing the Chapter 11 Case is a Final Order or (b) five (5) years after the date of creation of the GUC Liquidation Trust, unless extended by the Bankruptcy Court as provided in the GUC Liquidation Trust Agreement.

At such time as the GUC Liquidation Trust has been fully administered (i.e., when all things requiring action by the GUC Liquidation Trustee has been done, and the Plan has been substantially consummated) and in all events within sixty (60) days after the Final Distribution Date, the GUC Liquidation Trustee will file an application for approval of his or her final report.

**Section 5.16   Resignation or Removal of GUC Liquidation Trustee**. If the GUC Liquidation Trustee resigns or is removed, dies, dissolves, or is incapacitated, the GUC Liquidation Trustee or, as necessary, the Bankruptcy Court, shall designate another Person to become the GUC Liquidation Trustee and thereupon the successor GUC Liquidation Trustee, without further act, shall become fully vested with all of the rights, powers, duties, and obligations of his or her predecessor, including the compensation of the predecessor GUC Liquidation Trustee. No successor GUC Liquidation Trustee hereunder shall in any event have any liability or responsibility for the acts or omissions of any of his or her predecessors.

**Section 5.17   Funding for the Plan**. The Plan shall be funded from the Sale Proceeds and the proceeds from any other Assets available to fund the Plan, including recoveries from any retained Causes of Action.

DM_US 192080091-6.114791.0011

**Section 5.18** **Cancellation of Liens**. Except as otherwise specifically provided herein, including the preservation of the Secured Lender's Lien on Assets transferred to the Liquidation Trust, upon the payment of a Secured Claim in accordance with the Plan, any Lien securing such Secured Claim shall be deemed released, and the holder of such Secured Claim shall be authorized and directed to release any collateral or other property of the Debtor held by such holder and to take such actions as may be requested by the Liquidation Trustee, to evidence the release of such Lien, including the execution, delivery, and filing or recording of such releases as may be requested by the Liquidation Trustee.

**Section 5.19** **Establishment of Reserves**. At least seven (7) days prior to the Confirmation Hearing, the Debtor shall file with the Bankruptcy Court a notice that reflects the proposed amount of the Administrative and Priority Reserve Account and Liquidation Trust Funding Reserve. The Liquidation Trustee, in his or her sole discretion, shall have the authority to allocate and reallocate Assets of the Estate (including Cash, and including with respect to any reserves provided for under this Plan) as necessary to effectuate the Plan without further application to, or approval of, the Bankruptcy Court, to the extent such allocation or reallocation would not be inconsistent with the terms of this Plan; provided, however, that the Liquidation Trustee may, but is not required to, apply to the Bankruptcy Court on notice to parties included on the Post-Effective Date Notice List prior to making any such allocation or reallocation. In the event that the Liquidation Trustee determines that effectuation of the Plan or an equitable distribution to holders of Allowed Claims requires allocation or reallocation of Assets of the Estate in a manner that would otherwise be inconsistent with any term of this Plan (including for the purposes of distribution under the Plan), the Liquidation Trustee shall have the authority to make such allocation or reallocation with approval of the Bankruptcy Court upon application not the Bankruptcy Court on notice to parties included in the Post-Effective Date Notice List.

**Section 5.20** **General Settlement of Claims**. Pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification, distributions, releases, and other benefits provided under the Plan, on the Effective Date, the provisions of the Plan shall constitute a good-faith compromise and settlement of all Claims, Interests, and controversies resolved pursuant to the Plan. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of each of the foregoing compromises or settlements, and all other compromises and settlements provided for in the Plan, and the Bankruptcy Court's findings shall constitute its determination that such compromises and settlements are fair and equitable. All Plan Distributions made to holders of Allowed Claims and Allowed Interests (as applicable) in any Class are intended to be and shall be final.

**Section 5.21** **Cancellation of Existing Securities and Agreements**. Except for the purpose of evidencing a right to payment under the Plan and except as otherwise set forth in the Plan (including the Secured Lender's continuing Lien against Assets transferred to the Liquidation Trust as set forth in the Plan), on the Effective Date, the Series 2014 Knoxville Bonds shall be cancelled without further action by any party and the Series 2014 Knoxville Bonds and the documents related to such bonds shall be deemed to continue in effect solely to the extent they relate to and are necessary to: (i) allow applicable Distributions pursuant to the Plan and the documents related to the Series 2014 Knoxville Bonds; (ii)permit the Secured Lender to be compensated for fees and reimbursed for expenses including expenses of its professionals and enforce its indemnity and other rights and protections with respect to and pursuant to the

36

documents related to the Series 2014 Knoxville Bonds; (iii) permit the Secured Lender to set one or more record dates and distribution dates with respect to the distribution of funds to the Bondholders; (iv) permit the Secured Lender to appear in the Chapter 11 Case with respect to matters relevant to the Series 2014 Knoxville Bonds and to enforce its rights under this Plan; (v) otherwise continue to govern relationships of the Secured Lender and the Bondholders; and (vi) permit the Secured Lender to perform any functions that are necessary in connection with the foregoing clauses (i) through (v).

**Section 5.22   Notice of Effective Date**. Within three (3) business days following the Effective Date, the Debtor shall file a notice of the occurrence of the Effective Date of the Plan in accordance with the Bankruptcy Rules and orders of the Bankruptcy Court.

**Section 5.23   Corporate Action**. Except as otherwise provided herein, the Plan will be administered by the Liquidation Trustee and all actions taken under the Plan in the name of the Debtor shall be taken by and through the Liquidation Trustee.

**Section 5.24   Dissolution of the Committee**. On the Effective Date, the Committee shall be deemed dissolved, the retention and employment of the Committee's Professionals shall be deemed terminated, and the current and former Committee Members, professionals, employees, or agents thereof shall be released and discharged from all rights and duties arising from or related to the Chapter 11 Case, except for purposes of filing and/or objecting to final fee applications filed in the Chapter 11 Case and to the extent necessary to prosecute any appeals or other matters with respect to which they have been granted standing. The Debtor shall not be responsible for paying any fees or expenses incurred by Committee Members or Committee professionals and advisors after the Effective Date.

**Section 5.25   Confidentiality, Privilege**. On and after the Effective Date, any confidentiality obligations, attorney-client privilege or other privilege or immunity attaching to any documents or communications shall vest in the Liquidation Trust and its representatives and the GUC Liquidation Trust solely as to GUC Settlement Claims, and the Liquidation Trustee and its representatives and GUC Liquidation Trustee and its representatives shall not otherwise waive such confidentiality, privilege, or immunity without prior notice and a hearing before the Bankruptcy Court. The Debtor is authorized to take all actions it deems necessary to effectuate the transfer of such privilege, and any documents or communications that would otherwise be protected from discovery by virtue of any applicable privilege or immunity shall remain so protected. The Confirmation Order shall provide that the Liquidation Trustee's and GUC Liquidation Trustee's receipt of transferred privileges shall be without waiver in recognition of the joint and/or successorship interest in prosecuting claims on behalf of the Debtor's Estate. If any privileged documents are inadvertently produced to third parties, such production shall not be deemed to destroy any privilege or be deemed a waiver of any confidentiality protections afforded to such privileged documents.

**Section 5.26   Distributions to Holders of Claims and Interests**.

(a)      **Estimation of Claims**. The Liquidation Trust or the GUC Liquidation Trust, as applicable, may, at any time, request that the Bankruptcy Court (or the District Court, if applicable) estimate any Claim, for which such trust is responsible, not expressly Allowed by the terms of the

37

Plan and otherwise subject to estimation under section 502(c) of the Bankruptcy Code and for which the Debtor may be liable under the Plan, including any Claim for taxes, to the extent permitted by section 502(c) of the Bankruptcy Code, regardless of whether any party-in-interest previously objected to such Claim, and the Bankruptcy Court (or the District Court, if applicable) will retain jurisdiction to estimate any Claim pursuant to section 502(c) of the Bankruptcy Code at any time prior to the time that such Claim becomes an Allowed Claim. If the Bankruptcy Court (or the District Court, if applicable) estimates any contingent or unliquidated Claim, the estimated amount will constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court (or the District Court, if applicable). The foregoing objection, estimation, and resolution procedures are cumulative and not necessarily exclusive of one another. Claims may be estimated by the Bankruptcy Court (or the District Court, if applicable) and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court (or the District Court, if applicable).

(b)     **No Recourse**. Notwithstanding that the Allowed amount of any particular Disputed Claim is reconsidered under the applicable provisions of the Bankruptcy Code and Bankruptcy Rules or is Allowed in an amount for which after application of the payment priorities established by the Plan there is insufficient value to provide a recovery equal to that received by other holders of Allowed Claims in the respective Class, no Claim holder shall have recourse against the Debtor, the Estate, the Liquidation Trustee, the GUC Liquidation Trustee, or any of their respective professionals, consultants, officers, directors, or members or their successors or assigns, or any of their respective property. Except as specifically stated otherwise in the Plan, nothing in the Plan shall modify any right of a holder of a Claim under section 502(j) of the Bankruptcy Code.

THE ESTIMATION OF CLAIMS AND ESTABLISHMENT OF RESERVES UNDER THIS PLAN MAY LIMIT THE DISTRIBUTION TO BE MADE ON INDIVIDUAL DISPUTED CLAIMS IF THE ESTIMATION IS MADE SOLELY FOR THE PURPOSE OF ESTIMATING A MAXIMUM LIABILITY FOR RESERVE PURPOSES, REGARDLESS OF THE AMOUNT FINALLY ALLOWED ON ACCOUNT OF SUCH DISPUTED CLAIMS.

(c)     **Automatic Disallowance and Expungement of Certain Claims**. On the Effective Date, all Claims filed after the applicable Bar Date that were required to be filed on or in advance of such Bar Date under its terms, shall be expunged and disallowed without any further notice to or action, order, or approval of the Bankruptcy Court.

<u>**Section 5.27**</u>   **Disputed Claims**.

(a)     **Objections to Claims**. Unless otherwise ordered by the Bankruptcy Court, on and after the Effective Date, the GUC Liquidation Trust shall have the exclusive right to make, file, and prosecute objections to and settle, compromise, or otherwise resolve Disputed GUC Settlement Claims. Unless otherwise ordered by the Bankruptcy Court, the Liquidation Trustee shall have the exclusive right to make, file, and prosecute objections to and settle, compromise, or otherwise resolve all Disputed Claims that are not GUC Settlement Claims, except that as to applications for allowances of Professional Fee Claims, objections may be made in accordance with the applicable Bankruptcy Rules by parties in interest. Notwithstanding any authority to the contrary, an objection to a Claim shall be deemed properly served on the claimant if the Liquidation Trustee or the GUC Liquidation Trustee, as applicable, effects service in any of the

following manners (x) in accordance with Federal Rule of Civil Procedure 4, as modified and made applicable by Bankruptcy Rule 7004; (y) by first-class mail, postage prepaid, on the signatory of the Proof of Claim or other representative identified in the Proof of Claim or any attachment thereto at the address of the creditor set forth therein; or (z) by first-class mail, postage prepaid, on any counsel that has appeared on the claimant's behalf in the Chapter 11 Case.

All objections to Claims shall be filed with the Bankruptcy Court, and served upon the holders of such Claims, on or before the one hundred eightieth (180th) day after the Effective Date. The time period for filing objections to Claims shall automatically renew for successive periods of one hundred eighty (180) days each until the earlier of (i) the date upon which all Claims have been Allowed or Disallowed or (ii) the date fixed by the Bankruptcy Court upon motion of the Liquidation Trustee, GUC Liquidation Trustee, or a holder of a Claim.

(b) **Resolution of Disputed Claims**. No Distribution or payment shall be made on account of a Disputed Claim until such Disputed Claim becomes an Allowed Claim. Funds shall be held in reserve by the Liquidation Trustee or GUC Liquidation Trustee, as applicable, in the amount of each such Disputed Claim until the resolution of such Disputed Claim.

If the holder of a Disputed Claim or Claim that has not otherwise been Allowed and the Liquidation Trustee or GUC Liquidation Trustee, as applicable, agree to a settlement of such Claim (i) for payment that does not exceed fifty thousand dollars ($50,000) or (ii) by Allowing such Claim in an amount that does not exceed two hundred fifty thousand dollars ($250,000), the Liquidation Trustee or GUC Liquidation Trustee, as applicable, shall be authorized to enter into such settlement without any further notice or approval of the Bankruptcy Court, and the settled Claims shall be deemed an Allowed Claim. If the holder of such a Claim and the Liquidation Trustee or GUC Liquidation Trustee, as applicable, agree to a settlement of such Claim (i) for a payment that exceeds fifty thousand dollars ($50,000) or (ii) by allowing such Claim in an amount that exceeds two hundred fifty thousand dollars ($250,000), the Liquidation Trustee or GUC Liquidation Trustee, as applicable, shall provide notice of the proposed settlement (with a fourteen-day (14-day) period to object) to the Persons or Entities on the Post-Effective Date Notice List. If no objection is received within the fourteen-day (14-day) period, the settled claim shall be deemed to be an Allowed Claim, without the need for further review by, or approval of, the Bankruptcy Court or any other party. If an objection to a proposed settlement is received within the fourteen-day (14-day) period and such objection cannot otherwise be resolved, then the Liquidation Trustee or GUC Liquidation Trustee, as applicable, shall schedule a hearing in the Bankruptcy Court to resolve the objection.

## Section 5.28   Claims Paid or Payable by Third Parties

Subject to the terms of Section 5.29 below regarding Insured Claims, Claims paid and/or payable by third parties, irrespective of classification, shall be treated as follows:

(a) **Claims Paid by Third Parties**. A Claim shall be reduced in full, and such Claim shall be Disallowed without a Claim objection having to be filed and without any further notice to or action, order, or approval of the Bankruptcy Court, to the extent that the holder of such Claim receives payment in full on account of such Claim from a party that is not the Debtor. To the extent a holder of a Claim receives a Distribution under the Plan on account of such Claim and receives

payment from a party that is not the Debtor on account of such Claim, such holder shall, within two weeks of receipt thereof, repay or return the Distribution to the Liquidation Trustee or GUC Liquidation Trustee, as applicable to the extent the holder's total recovery on account of such Claim from the third party and under the Plan exceeds the Allowed amount of such Claim.

(b) **Claims Payable by Third Parties**. No Distribution under the Plan shall be made on account of an Allowed Claim that is payable by a party that is not the Debtor, including pursuant to any insurance policy under which the Debtor is a covered party or beneficiary (including the Insurance Policies), until the holder of such Allowed Claim has exhausted all remedies with respect to such third party or insurance policy. To the extent that one or more of the Debtor's insurers or another third party agrees to satisfy in full or in part an Allowed Claim, then immediately upon such agreement, the applicable portion of such Claim may be Disallowed and expunged without a Claim objection having to be filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

<u>Section 5.29</u>   **Special Issues Regarding Insured Claims**

Under the terms of the Debtor's various insurance policies, the Debtor may owe deductible amounts on account of Insured Claims for personal injury and medical malpractice. After the Effective Date of the Plan (unless an order modifying the automatic stay has been entered at an earlier date), holders of Insured Claims shall be enjoined by the injunction established by the Confirmation Order from commencing or continuing any enforcement action to collect such Claim against the Estate.

Consistent with the foregoing, Distributions under the Plan to each holder of an Allowed Insured Claim shall be recoverable only from the available insurance and Debtor shall be discharged to the extent of any such excess. Further, the Plan shall not expand the scope of, or alter in any other way, the rights and obligations of the Debtor's insurers under its policies, and the Debtor's insurers shall retain any and all defenses to coverage that such insurers may have, including the right to contest and/or litigate with any party, including the Debtor, the existence, primacy and/or scope of available coverage under any alleged applicable policy. The Plan shall not operate as a waiver of any other Claims that the Debtor's insurers have asserted or may assert in any Proof of Claim or the Debtor's rights and defenses to such proofs of Claim.

<u>Section 5.30</u>   **Miscellaneous Distribution Provisions**.

(a) **Method of Cash Distributions**. All Distributions shall be made, pursuant to the terms of the Plan, by the Liquidation Trust, GUC Liquidation Trust, or a duly-appointed disbursing agent to the holders of Allowed Claims. Cash payments made pursuant to the Plan shall be in United States dollars by checks drawn on a domestic bank selected by the Liquidation Trustee or GUC Liquidation Trustee, as applicable or by wire transfer from a domestic bank, at the option of the Liquidation Trustee or GUC Liquidation Trustee, as applicable; provided, however, that Cash payments made to foreign creditors, if any, holding Allowed Claims may be (but are not required

to be) paid, at the option of the Liquidation Trustee or GUC Liquidation Trustee, as applicable, in such funds and by such means as are necessary or customary in a particular foreign jurisdiction.

(b)     **No Distribution in Excess of Allowed Amount of Claim**. Notwithstanding anything to the contrary herein, no holder of an Allowed Claim shall receive in respect of such Claim any Distribution in excess of the amount of such Allowed Claim plus interest as provided herein.

**Section 5.31     Allocation of Payments**. Amounts paid to holders of Allowed Claims in satisfaction thereof shall be allocated first to the principal amounts of such Claims, with any excess allocated to any interest that has accrued on such Claims but remains unpaid.

**Section 5.32     Setoffs**. The Liquidation Trustee and GUC Liquidation Trustee, as applicable, are authorized, pursuant to and to the extent permitted by applicable law, to set off against any Allowed Claim and the Distributions to be made on account of such Allowed Claim, the claims, rights, and Causes of Action of any nature that the Debtor, Liquidation Trustee, or GUC Liquidation Trustee, as applicable, may hold against the holder of such Allowed Claim. Neither the failure to effect such a setoff nor the allowance of any Claim under the Plan shall constitute a waiver or release by the Debtor, Liquidation Trustee, or GUC Liquidation Trustee of any such claims, rights, and Causes of Action the Debtor or the Liquidation Trustee, as applicable, may have against such holder.

**Section 5.33     Exemption from Transfer Taxes**. Pursuant to section 1146(a) of the Bankruptcy Code, the assignment or transfer of any lease or sublease, the delivery, making, filing, or recording of any deed or other instrument of transfer, or the issuance, transfer, or exchange of any security, under the Plan, including any deeds, bills of sale, or assignments executed in connection with the Sale Transaction or any other disposition of assets contemplated by the Plan or the Sale Order, shall not be subject to any stamp, real estate transfer, mortgage, recording, or other similar tax to the maximum extent covered by section 1146 of the Bankruptcy Code.

**Section 5.34     Disputed Payments**. If any dispute arises as to the identity of a holder of an Allowed Claim who is to receive any Distribution, the Liquidation Trustee or GUC Liquidation Trustee, as applicable, may, in lieu of making such Distribution to such Person, make such Distribution into an escrow account to be held in trust for the benefit of such holder and such Distribution shall not constitute property of the Debtor, the Estate, the Liquidation Trust, or the GUC Liquidation Trust, as applicable. Such Distribution shall be held in escrow until the disposition thereof shall be determined by order of the Bankruptcy Court or other court of competent jurisdiction or by written agreement signed by all of the interested parties to such dispute.

**Section 5.35     Withholding Taxes**. The Liquidation Trustee or GUC Liquidation Trustee, as applicable, shall not be required to withhold taxes or comply with any applicable reporting requirements. The recipients of Distributions will be required to comply with all applicable laws and regulations concerning the reporting and taxing of the Distributions. If requested by the recipient of a Distribution, the Liquidation Trustee or GUC Liquidation Trustee, as applicable, will issue an IRS Form 1099.

41

**Section 5.36   Request for Expedited Determination of Taxes**. The Debtor or the Liquidation Trustee, as applicable, shall have the right to request an expedited determination under section 505(b) of the Bankruptcy Code with respect to tax returns filed, or to be filed, for any and all taxable periods ending after the Petition Date through the Effective Date.

**Section 5.37   Resignation of Directors and Officers**. Upon the Effective Date, the Debtor's boards of directors and officers shall be deemed to have resigned without the necessity of any further action or writing, and they shall be released from responsibilities, duties, and obligations arising after the Effective Date to the Debtor or its creditors under the Plan and applicable law; provided, however, that pursuant to section 1142(b) of the Bankruptcy Code, after the Effective Date the officers and directors of the Debtor shall be authorized to file the Debtor's tax returns and take any other actions related to or required for the dissolution of the Debtor and shall provide reasonable cooperation and assistance as may be requested by the Liquidation Trustee or the GUC Liquidation Trustee.

**Section 5.38   Liability; Indemnification; No Agency Relationship**. The Liquidation Trustee and GUC Liquidation Trustee shall not be deemed to be the agent for any of the holders of Claims in connection with the funds held or distributed pursuant to the Plan. The Liquidation Trustee or GUC Liquidation Trustee, as applicable, and any professional person, representative, director, officer, employee, or agent of the Liquidation Trust or GUC Liquidation Trust or the Liquidation Trustee or GUC Liquidation Trustee (collectively, the "**Indemnified Parties**") shall not be liable for any mistake of fact or law or error of judgment or any act or omission of any kind for acts or omissions related to the Plan and the Liquidation Trust or GUC Liquidation Trust, as applicable, unless it constitutes gross negligence, willful misconduct, or breach of fiduciary duty. The Indemnified Parties shall be indemnified and held harmless, including the cost of defending such claims and attorneys' fees in seeking indemnification, by the Liquidation Trust or GUC Liquidation Trust, as applicable, against any and all claims arising out of his or her duties under the Plan and the Liquidation Trust or GUC Liquidation Trust, as applicable, except to the extent his or her actions constitute gross negligence, willful misconduct, or breach of fiduciary duty. The Indemnified Parties may conclusively rely and shall be fully protected personally in acting upon any statement, instrument, opinion, report, notice, request, consent, order, or other instrument or document which he or she believes to be genuine and to have been signed or presented by the proper party or parties. The Indemnified Parties may rely upon information previously generated by the Debtor and such additional information provided to him or her by former employees of the Debtor. Neither the Liquidation Trustee nor the GUC Liquidation Trustee shall be required to give any bond for the faithful performance of his or her duties but may do so, in the Liquidation Trustee's or GUC Liquidation Trustee's discretion, as applicable, in which case the expense incurred by such bonding shall be paid by the applicable Liquidation Trust or GUC Liquidation Trust.

**Section 5.39   Plan Settlements**. The terms of this Plan incorporate the Plan Settlements among the Debtor, holders of the Secured Lender Prepetition Claims, the Committee, and certain other creditors that shall become effective on the Effective Date. The terms of the Plan Settlements are described below, contained in the terms of the Plan, and any additional Plan Settlements, if any, shall be set forth in the Plan Supplement.

1.      **Settlement of GUC Settlement Claims.**

The Secured Lender filed a Proof of Claim against the Estate in the amount of $112,681,255.67. The Secured Lender has an allowed first-priority Secured Claim in substantially all of the Estate's Assets, including, without limitation, accounts and Cash, to secure repayment of its Claim against the Estate. On November 11, 2022, the Debtor filed the Distribution Motion seeking to distribute certain Sale Proceeds to the Secured Lender and retain other Sale Proceeds as a prudent holdback in part to fund this Plan. The Committee filed an objection to the Distribution Motion and raised various other disputes. After good-faith, arms-length negotiations, to avoid the expense, inconvenience, delay, and uncertainty of prosecuting these disputes, the Debtor, the Secured, Lender, and the Committee agreed to fully and completely resolve their respective disputes and claims in connection with the Distribution Motion (the "**Committee Settlement**") as stated on the record at the hearing held on November 29, 2022. If approved, the Committee Settlement resolves the outstanding disputes and claims between the Debtor, the Committee, and the Secured Lender in connection with the Distribution Motion. The terms of the Committee Settlement are as follows:

- The Committee withdrew its objection to the distribution provided in the Distribution Order.

- The Committee supports a reasonably expeditious confirmation of the Plan, as modified by the Committee Settlement.

- The Plan shall contain a separate Class for the GUC Settlement Claims, which shall not include any claims of (i) the Debtor's Insiders; (ii) any Deficiency Claim of any Secured creditor, including the Secured Lender or Bondholders; and (iii) any Claims under Section 502(h) of the Bankruptcy Code.

- The GUC Settlement Claims Class shall receive as its sole Distribution under the Plan the GUC Liquidation Trust Interests, which shall be established for the administration of the GUC Settlement Claims.

- The Committee will prepare and provide the GUC Liquidation Trust Agreement to be filed as part of the Plan Supplement.

- Michael Collins of Manier & Herod, P.C. will be selected as the GUC Liquidation Trustee for the benefit of the Class of GUC Settlement Claims.

- The GUC Liquidation Trustee will act as reconciliation and disbursing agent for the Allowed GUC Settlement Claims.

- On the Effective Date of the Plan, the Liquidation Trust will receive the Settlement Payment which will form the GUC Liquidation Trust Pool from the Debtor carved out of the Secured Lender's Collateral.

- The GUC Liquidation Trustee will receive payment of his fees and expenses from the GUC Liquidation Trust Pool.

- The GUC Settlement Claims Class waives all rights to any other recovery from the Debtor's Estate or the Liquidation Trust – e.g., the GUC Settlement Claims Class will not share in any litigation recovery.

- The Secured Lender, on behalf of itself and the Bondholders, waives all rights to any recovery from the GUC Liquidation Trust.

- The Debtors, the Committee, and the Secured Lender will work together to file a modified plan and disclosure statement implementing the terms of the Committee Settlement and corresponding modifications to the plan documents.

- The Committee will use reasonable efforts to minimize Professional Fees and expenses in connection with the modification and confirmation of the proposed plan consistent with the foregoing terms.

The Debtor believes that the terms of the Committee Settlement are fair and equitable and in the best interests of the Estate. As a result, the Committee Settlement should be approved by the Bankruptcy Court in the Confirmation Order pursuant to Bankruptcy Rule 9019(b).

## ARTICLE VI

## EFFECT OF PLAN ON CLAIMS, INTERESTS, AND CAUSES OF ACTION

**Section 6.01** **Binding Effect**. Except as otherwise provided in section 1141(d) of the Bankruptcy Code, on and after the Confirmation Date, the provisions of the Plan shall bind any holder of a Claim or Interest against the Debtor who held such Claim or Interest at any time during the Chapter 11 Case and its respective successors and assigns, whether or not the Claim or Interest of such holder is Impaired under the Plan and whether or not such holder has accepted (or has been deemed to accept) the Plan.

**Section 6.02** **Term of Injunctions or Stays**. Unless otherwise provided herein, all injunctions or stays provided for in the Chapter 11 Case pursuant to sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Chapter 11 Case is closed.

**Section 6.03** **Retention of Rights and Causes of Action**. Except as provided in the Plan, all present or future rights, claims, or Causes of Action, rights of setoff or recoupment, or other legal or equitable defenses that the Debtor held on behalf of the Estate or of the Debtor in accordance with any provision of the Bankruptcy Code or any applicable nonbankruptcy law against any Person and have not been released or sold on or prior to the Effective Date are preserved for the Liquidation Trust. On the Effective Date, pursuant to section 1123(b)(3) of the Bankruptcy Code, the Liquidation Trust shall have possession and control of, and shall retain and have the right to enforce and pursue, any and all present or future rights, claims, or Causes of Action, rights of setoff or recoupment, or other legal or equitable defenses against any Person and with respect to any rights of the Debtor or the Estate that arose before or after the Petition Date. The Liquidation Trust retains, reserves, and shall be entitled to assert and pursue all such claims,

44

Causes of Action, rights of setoff, or other legal or equitable defenses, and all legal and equitable rights of the Debtor and the Estate not expressly released under the Plan that may be asserted after the Effective Date. The Debtor or the Liquidation Trustee, as applicable, may abandon, settle, or release any or all such claims, rights or Causes of Action, as it deems appropriate without further order of the Bankruptcy Court. In pursuing any claim, right, or Cause of Action, the Liquidation Trustee, as the representative of the Estate, shall be entitled to the extensions provided under section 108 of the Bankruptcy Code. Except as otherwise provided in the Plan, all Causes of Action shall survive confirmation and the commencement or prosecution of Causes of Action shall not be barred or limited by any estoppel, whether judicial, equitable, or otherwise. Notwithstanding the foregoing, the Debtor shall not retain any Claims or Causes of Action released pursuant to sections 6.04, 6.05, 6.06, or 6.07 of the Plan against the Released Parties except that such Claims or Causes of Action may be asserted as a defense to a Claim in connection with the claims reconciliation and objection procedures pursuant to section 502(d) of the Bankruptcy Code or otherwise.

*__Section 6.04__* **Releases by the Debtor and its Estate**. *Pursuant to section 1123(b) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan or arising from intentional fraud, gross negligence, or willful misconduct, for good and valuable consideration, on and after the Effective Date, each Released Party is deemed released by the Debtor and the Estate from any and all claims, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, including any derivative claims, asserted on behalf of the Debtor, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, whether for tort, contract, violations of federal or state securities laws, or otherwise, that the Debtor or the Estate would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtor, the Chapter 11 Case, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between the Debtor and any Released Party, the restructuring of Claims and Interests before or in the Chapter 11 Case, the negotiation, formulation, or preparation of the Plan, the Plan Supplement, the Disclosure Statement, the Sale Order, the Purchase Agreement, or related agreements, instruments, or other documents, or upon any other act or omission, transaction, agreement, event, or other occurrence relating to the Debtor taking place on or before the Effective Date; provided, however, that the foregoing release shall not prohibit the Debtor, the Liquidation Trust, the Liquidation Trustee, the GUC Liquidation Trust, or the GUC Liquidation Trustee from asserting any and all defenses and counterclaims in respect of any Disputed Claim asserted by any Released Party.*

*For the avoidance of doubt, except as set specifically forth herein, nothing in this Plan or any related document shall impair any rights with respect to any D&O Claims and all D&O Claims are expressly reserved and preserved.*

*__Section 6.05__* **Releases by holders of Claims and Interests**. *As of the Effective Date, except as otherwise provided in the Plan or arising from intentional fraud, gross negligence, or willful misconduct, the Releasing Parties are deemed to have released the Released Parties from any and all claims, interests, obligations, rights, suits, damages, Causes of Action, remedies and liabilities whatsoever, including any direct claims held by any of the Releasing Parties against the Released Parties or derivative claims asserted on behalf of the Debtor, whether known or*

*unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, whether for tort, contract, violations of federal or state securities laws, or otherwise, that each Releasing Party would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtor, the Chapter 11 Case, the sale of substantially all of the Debtor's assets, the subject matter of, or the transactions or events giving rise to, any claim or Interest that is treated in the Plan, the business or contractual arrangements between the Debtor and any Released Party, the restructuring of claims and Interests before or in the Chapter 11 Cases, the negotiation, formulation, or preparation of the Plan, the Sale Order, the Purchase Agreement, or related agreements, instruments, or other documents, or upon any other act or omission, transaction, agreement, event, or other occurrence relating to the Debtor taking place on or before the Effective Date. Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release any post-Effective Date obligations of any party under the Plan or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.*

<u>**Section 6.06**</u>   **Injunction**.

(a)    **Satisfaction of Claims and Interests**. *The treatment to be provided for Allowed Claims and Interests shall be in full satisfaction, settlement, and release of each such Claim and Interest.*

(b)    **Scope of Injunction**. *Except as otherwise provided in the Plan or the Confirmation Order, as of the Effective Date, all Persons that hold a Claim or Interest are permanently enjoined from taking any of the following actions against the Debtor, the Liquidation Trustee, or any Released Party on account of any Claim or Interest: (i) commencing or continuing in any manner any action or other proceeding with respect to a Claim or Interest or based upon a theory which arises out of such holder's Claim or Interest; (ii) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order with respect to a Claim or Interest; (iii) creating, perfecting, or enforcing any lien or encumbrance with respect to a Claim or Interest; (iv) asserting a setoff, right of subrogation, or recoupment of any kind with respect to a Claim or Interest, the assets, or other property of the Estate; and (v) commencing or continuing any action that does not comply with or is inconsistent with the Plan. For the avoidance of doubt, nothing in this injunction shall limit the rights of a holder of a Claim to enforce the terms of the Plan.*

(c)    **Release of Collateral**. *Except as expressly provided herein, unless a holder of a Secured Claim receives a return of its Collateral in respect of such Claim under the Plan: (i) each holder of (A) an Allowed Secured Claim; and/or (B) an Allowed Claim that is purportedly secured, on the Effective Date shall (1) turn over and release to the Liquidation Trust any and all property that secures or purportedly secures such Claim; and (2) execute such documents and instruments as the Liquidation Trustee requires to evidence such claimant's release of such property; and (ii) on the Effective Date, all claims, rights, title, and interest in such property shall revert to the Liquidation Trust, free and clear of all Claims, including (without limitation) Liens, charges, pledges, encumbrances, and/or security interests of any kind. No Distribution shall be made to or on behalf of any holder of such Claim unless and until such holder executes and delivers to the Liquidation Trustee such release of Liens. Any such holder that fails to*

46

*execute and deliver such release of Liens within 60 days of any demand thereof shall be deemed to have no further Claim and shall not participate in any Distribution hereunder. Notwithstanding the immediately preceding sentence, a holder of a Disputed Claim shall not be required to execute and deliver such release of Liens until the time such Claim is Allowed or disallowed.*

(d) **Cause of Action Injunction**. *On and after the Effective Date, all Persons other than the Liquidation Trustee will be permanently enjoined from commencing or continuing in any manner any action or proceeding (whether directly, indirectly, derivatively, or otherwise) on account of, or respecting any claim, debt, right, or Cause of Action that the Liquidation Trustee retains authority to pursue in accordance with the Plan.*

(e) **Exculpation**. *Except as otherwise set forth in the Plan, none of the Exculpated Parties shall have or incur any liability to any Person or entity for any action taken or omitted to be taken in connection with or related to the formulation, preparation, dissemination, implementation, confirmation, or consummation of the Plan, the Disclosure Statement, the Sale Order, the Purchase Agreement, or any contract, release, or other agreement or document created or entered into, or any other action taken or omitted to be taken in connection with the Plan, the administration of the Plan or property to be distributed pursuant to the Plan, the Sale Transaction, and actions taken or omitted to be taken in connection with the Chapter 11 Case or the operations, monitoring, or administration of the Debtor during the Chapter 11 Case (other than for illegal conduct, willful or wanton conduct, or gross negligence, or fraud as determined by a Final Order of a court of competent jurisdiction), and the Liquidation Trustee and GUC Liquidation Trustee shall have no liability for any action taken or omitted to be taken in connection with or related to the winding down and post-confirmation administration of the Estate, except for intentional fraud, gross negligence, or willful misconduct.*

**Section 6.07** **Preservation and Application of Insurance**. For the avoidance of doubt, on the Effective Date, the Debtor's rights with respect to all Insurance Policies (including under which the Debtor may be a beneficiary or assignee (including insurance for the Debtor's directors and officers (a "**D&O Insurance Policy**") all Insurance Policies that may have expired prior to the Petition Date, all Insurance Policies in existence on the Petition Date, all Insurance Policies entered into by or for the benefit of the Debtor after the Petition Date, and all Insurance Policies under which the Debtor holds rights to make, amend, prosecute, and benefit from claims) shall revest in the Liquidation Trust or Debtor, as necessary, for the Liquidation Trustee to pursue and prosecute any Causes of Action, and to the extent that any Insurance Policies are not necessary for the pursuit and prosecution of any Causes of Action by the Liquidation Trustee, all such Insurance Policies shall be transferred to the Liquidation Trust from the Effective Date until its dissolution. Notwithstanding any provision providing for the rejection of Executory Contracts, any Insurance Policy that is deemed to be an Executory Contract shall neither be rejected nor assumed by operation of this Plan.

The Confirmation Order shall constitute a determination that no default by the Debtor exists with respect to any of the Insurance Policies requiring cure, and that nothing in any prior order, any prior agreements, or this Plan shall be construed or applied to modify, impair, or otherwise affect the enforceability of the Insurance Policies or any coverage thereunder with regard to any Claims or Causes of Action, including the D&O Claims. The Plan shall be liberally

47

construed to protect the interests of all creditors in all Causes of Action and to limit any Claims against the Estate.

<u>Section 6.08</u>    **Compromise of Controversies**. Pursuant to Bankruptcy Rule 9019, and in consideration of the classification, distribution, and other benefits provided under the Plan, the provisions of the Plan shall constitute a good faith compromise and settlement of all Claims and controversies resolved pursuant to the Plan, including, without limitation, all Claims arising prior to the Effective Date, whether known or unknown, foreseen or unforeseen, asserted or unasserted, arising out of, relating to, or in connection with the business or affairs of or transactions with the Debtor. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of each of the foregoing compromises or settlements, and all other compromises and settlements provided for in the Plan, and the Bankruptcy Court's findings shall constitute its determination that such compromises and settlements are in the best interests of the Debtor, the Estate, creditors, and other parties in interest, and are fair, equitable, and within the range of reasonableness.

<u>Section 6.09</u>    **Solicitation of Plan**. As of and subject to the occurrence of the Confirmation Date: (a) the Debtor shall be deemed to have solicited acceptances of the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code, including without limitation, sections 1125(a) and (e) of the Bankruptcy Code, and any applicable non-bankruptcy law, rule, or regulation governing the adequacy of disclosure in connection with such solicitation and (b) the Debtor and each of its respective directors, officers, employees, agents, financial advisors, investment bankers, professionals, accountants, and attorneys shall be deemed to have participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code in the offer and issuance of any securities under the Plan, and therefore are not, and on account of such offer, issuance, and solicitation will not be, liable at any time for any violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or the offer and issuance of any securities under the Plan.

<u>Section 6.10</u>    **Post-Confirmation Activity**. As of the Effective Date, the Liquidation Trustee may conclude the implementation of the Plan and winding down of the Debtor's affairs without supervision of the Bankruptcy Court, other than those restrictions expressly imposed by the Plan and the Confirmation Order. Without limiting the foregoing, the Liquidation Trust and the GUC Liquidation Trust, as applicable, may pay any charges it incurs for taxes, professional fees, disbursements, expenses, or related support services after the Effective Date without application to and approval of the Bankruptcy Court.

<u>Section 6.11</u>    **Avoidance Actions**. On the Effective Date, the Liquidation Trustee shall be deemed the successor to any and all Avoidance Actions that a trustee, debtor-in-possession, or other appropriate party-in-interest would be able to assert on behalf of the Debtor under applicable state statutes or the avoidance provisions of chapter 5 of the Bankruptcy Code, including actions under one or more of the provisions of Bankruptcy Code sections 502, 506, 541 through 551, and 553, including, without limitation, the retained Causes of Action specifically identified in the Plan Supplement.

<u>Section 6.12</u>    **Contingent Claims**. Until such time as a contingent Claim or a contingent portion of an Allowed Claim becomes fixed or absolute or is a Disallowed Claim, such Claim will be treated as a Disputed Claim for all purposes related to Distributions under the Plan. The holder

48

of a contingent Claim will only be entitled to a Distribution under the Plan when and if such contingent Claim becomes an Allowed Claim, subject, however, to section 502(e) of the Bankruptcy, and, provided that if such contingent Claim is for reimbursement, indemnification, or contribution at the time of allowance or disallowance, it will be a Disallowed Claim pursuant to Bankruptcy Code § 502(e)(1)(B), notwithstanding section 502(j) of the Bankruptcy Code, unless prior to the Confirmation Date (1) such Claim has been adjudicated as non-contingent; or (2) the relevant holder of a Claim has filed a non-contingent Proof of Claim on account of such Claim and a Final Order has been entered prior to the Confirmation Date determining such Claim as no longer contingent.

## ARTICLE VII

## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**Section 7.01    Executory Contract and Unexpired Leases**. To the extent not previously rejected or listed on the schedule of rejected Executory Contracts and unexpired leases filed with the Plan Supplement, on the Confirmation Date, but subject to the occurrence of the Effective Date, all of the Debtor's Executory Contracts and unexpired leases entered into prior to the Petition Date that have not previously been assumed or rejected, and have not been assumed and assigned during the Chapter 11 Case, shall be deemed rejected by the Debtor pursuant to the provisions of section 365 of the Bankruptcy Code unless otherwise provided in the Plan.

**Section 7.02    Rejection Damages Bar Date**. If rejection, pursuant to the Plan, of an Executory Contract or unexpired lease, results in a Claim, then such Claim shall be forever barred and shall not be enforceable against the Debtor or its property, the Liquidation Trustee, or the GUC Liquidation Trustee unless a Proof of Claim is filed with the Bankruptcy Court and served upon the Liquidation Trustee not later than 30 days after the date of service of notice of entry of the Confirmation Order, or such other period set by the Bankruptcy Court. Any such Claim, to the extent Allowed, shall be classified as a Class 5 GUC Settlement Claim.

**Section 7.03    Effect of Post-Confirmation Rejection**. The entry by the Bankruptcy Court on or after the Confirmation Date of an order authorizing the rejection of an Executory Contract or unexpired lease entered into prior to the Petition Date shall result in such rejection being a prepetition breach under sections 365(g) and 502(g) of the Bankruptcy Code.

## ARTICLE VIII

## CONDITIONS TO CONFIRMATION
## AND OCCURRENCE OF EFFECTIVE DATE

**Section 8.01    Conditions to Confirmation**. The Plan may not be confirmed unless the Confirmation Order is entered in a form reasonably acceptable to the Plan Proponent, the Secured Lender, and the Committee.

**Section 8.02    Conditions to Occurrence of Effective Date**. The Effective Date for the Plan may not occur unless each of the conditions set forth below is satisfied. Any one or more of

the following conditions may be waived in whole or in part at any time by the Plan Proponent in consultation with the Secured Lender and the Committee:

(a)     The Bankruptcy Court shall have entered the Confirmation Order and it shall have become a Final Order and shall not have been stayed, modified, or vacated on appeal.

(b)     The Confirmation Order shall provide for the releases, injunctions, and exculpation of the Persons provided for by the Plan.

(c)     The Liquidation Trustee shall have been appointed as Liquidation Trustee and shall have accepted to act in such capacity in accordance with the terms and conditions of the Plan.

(d)     The GUC Liquidation Trustee shall have been appointed as GUC Liquidation Trustee and shall have accepted to act in such capacity in accordance with the terms and conditions of the Plan.

(e)     All actions, documents, and agreements necessary to implement and consummate the Plan shall have been effected or executed and binding on all parties thereto.

(f)     All governmental and third-party approvals and consents, including Bankruptcy Court approval, necessary in connection with the transactions contemplated by the Plan shall have been obtained, not be subject to unfilled conditions, and be in full force and effect, and all applicable waiting periods shall have expired without any action being taken or threatened by any competent authority that would restrain, prevent, or otherwise impose materially adverse conditions on such transactions.

**Section 8.03    Effect of Nonoccurrence of the Conditions to Occurrence of Effective Date**. If each of the conditions to the occurrence of the Effective Date has not been satisfied or duly waived on or before the date which is no later than the first Business Day after thirty (30) days after the Confirmation Date, or by such later date as is approved, after notice and a hearing, by the Bankruptcy Court, then upon motion by any party-in-interest made before the time that each of the conditions has been satisfied or duly waived, the Confirmation Order may be vacated by the Bankruptcy Court; provided, however, that, notwithstanding the filing of such a motion, the Confirmation Order shall not be vacated if each of the conditions to occurrence of the Effective Date is either satisfied or duly waived before the Bankruptcy Court enters an order granting the relief requested in such motion. If the Confirmation Order is vacated pursuant the Plan, then the Plan shall be null and void in all respects, and nothing contained in the Plan shall: (a) constitute a waiver or release of any claims by or against the Debtor, or (b) prejudice in any manner the rights of the Debtor or of any other party-in-interest.

**ARTICLE IX**

**CONFIRMABILITY AND
SEVERABILITY OF THE PLAN**

**Section 9.01    Reservation of Rights as to Plan**. The Plan Proponent reserves the right to alter, amend, modify, revoke, or withdraw the Plan. If the Plan Proponent revokes or withdraws

from the Plan, then nothing contained herein shall be deemed to constitute a waiver or release of any Claims by or against the Debtor, or to prejudice in any manner the rights of the Plan Proponent or any persons in any further proceedings involving the Plan Proponent. A determination by the Bankruptcy Court that the Plan, as it applies to the Debtor, is not confirmable pursuant to section 1129 of the Bankruptcy Code shall not limit or affect the Plan Proponent's ability to modify the Plan to satisfy the confirmation requirements of section 1129 of the Bankruptcy Code. Each provision of the Plan shall be considered severable and, if for any reason any provision or provisions herein are determined to be invalid and contrary to any existing or future law, the balance of the Plan shall be given effect without relation to the invalid provision, to the extent it can be done without causing a material change in the Plan.

**Section 9.02** **Confirmation in Accordance with Section 1129(b)**. The Plan Proponent shall have the right to request the Bankruptcy Court to confirm the Plan in accordance with section 1129(b) of the Bankruptcy Code.

**ARTICLE X**

**ADMINISTRATIVE PROVISIONS**

**Section 10.01 Retention of Jurisdiction**. Notwithstanding confirmation of the Plan or occurrence of the Effective Date, the Bankruptcy Court shall retain jurisdiction and authority for all purposes permitted under applicable law, including, without limitation, for the following purposes:

(a) to determine any motion, adversary proceeding, Avoidance Action, application, contested matter, or other litigated matter pending on or commenced after the Confirmation Date;

(b) to hear and determine applications for the assumption or rejection of Executory Contracts or unexpired leases and the allowance, estimation, or payment of Claims and cure disputes resulting therefrom;

(c) to ensure that Distributions to holders of Allowed Claims are accomplished as provided herein and to adjudicate any and all disputes arising from or relating to Distributions under the Plan;

(d) to hear and determine objections to the allowance of Claims, whether filed, asserted, or made before or after the Effective Date, including, without limitation, to hear and determine objections to the classification of Claims and the allowance or disallowance of Disputed Claims, in whole or in part;

(e) to consider Claims or the allowance, classification, priority, compromise, estimation, or payment of any Claim; provided, however, that the District Court shall have jurisdiction to estimate any Claim that cannot be estimated by the Bankruptcy Court;

(f) to enter, implement, or enforce such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, reversed, revoked, modified, or vacated;

(g)     to determine any matter (i) under the Purchase Agreement; (ii) in connection with the Sale Transaction; or (iii) the Sale Order;

(h)     to issue injunctions, enter and implement other Orders, and take such other actions as may be necessary or appropriate to restrain interference by any Person with the consummation, implementation, or enforcement of the Plan, the Confirmation Order, or any other order of the Bankruptcy Court;

(i)     to hear and determine any application to modify the Plan in accordance with section 1127 of the Bankruptcy Code, to remedy any defect or omission or reconcile any inconsistency in the Plan, the Disclosure Statement, or any order of the Bankruptcy Court, including the Confirmation Order, in such a manner as may be necessary to carry out the purposes and effects thereof;

(j)     to hear and determine all Professional Fee Claims;

(k)     to hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan, the Plan Supplement, the Confirmation Order or any transactions or payments contemplated hereby or thereby, or any agreement, instrument, or other document governing or relating to any of the foregoing;

(l)     to take any action and issue such orders as may be necessary to construe, enforce, implement, execute, and consummate the Plan, the Liquidation Trust Agreement, the GUC Liquidation Trust Agreement, and the Plan Settlements, including any release or injunction provisions set forth herein, or to maintain the integrity of the Plan following consummation;

(m)     to determine such other matters and for such other purposes as may be provided in the Confirmation Order;

(n)     to hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

(o)     to enter a final decree closing the Chapter 11 Case;

(p)     to recover all assets of the Debtor and the Liquidation Trust, and property of the Estate, wherever located;

(q)     to hear and determine any rights, Claims, or Causes of Action held by or accruing to the Debtor and/or the Liquidation Trust pursuant to the Bankruptcy Code or pursuant to any statute or legal theory;

(r)     to hear and determine any matters for which jurisdiction was retained by the Bankruptcy Court pursuant to prior orders; and

(s)     to hear and determine any other matters related hereto and not inconsistent with the Bankruptcy Code, title 28 of the United States Code, and other applicable law.

**Section 10.02  Courts of Competent Jurisdiction**. If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising out of the Plan, such abstention, refusal, or failure of jurisdiction shall have no effect upon and shall not control, prohibit, or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter.

**Section 10.03  Governing Law**. Except to the extent the Bankruptcy Code, Bankruptcy Rules, or other federal laws apply, the laws of the State of Tennessee shall govern the rights and obligations arising under the Plan, without giving effect to principles of conflicts of law of Tennessee.

**Section 10.04  Effectuating Documents and Further Transactions**. The Debtor, the Liquidation Trustee, or the GUC Liquidation Trustee, as applicable, shall be authorized to execute, deliver, file, or record such contracts, instruments, releases, and other agreements or documents and take such action as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

**Section 10.05  Immediate Binding Effect**. Notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan (including, the documents and instruments contained in the Plan Supplement) shall be immediately effective and enforceable and deemed binding upon the Debtor, any and all holders of Claims or Interests (irrespective of whether such Claims or Interests are deemed to have accepted the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, discharges, and injunctions described in the Plan, each Entity acquiring property under the Plan, and any and all non-Debtor parties to Executory Contracts and/or Unexpired Leases with the Debtor.

**Section 10.06  No Admissions**. Notwithstanding anything herein to the contrary, nothing contained in the Plan or the Disclosure Statement shall be deemed as an admission by any Person with respect to any matter set forth herein.

**Section 10.07  Payment of Statutory Fees**. All US Trustee Fees, as determined by the Bankruptcy Court on the Confirmation Date, shall be paid on the Effective Date, or as soon as practicable thereafter by the Debtor. Any US Trustee Fees that may be owed by the Debtor after the Confirmation Date shall be paid by the Debtor or, if the Debtor has been dissolved, shall be deemed satisfied by the Debtor's payment of US Trustee fees on its disbursement of funds to the Liquidation Trust and GUC Liquidation Trust on the Effective Date. Following disbursement of funds to the Liquidation Trust and GUC Liquidation Trust, no further payments will be owed to the US Trustee.

**Section 10.08  Abandonment of Certain Assets**. The Plan shall constitute a motion for authorization to abandon, pursuant to section 554 of the Bankruptcy Code, all of the Debtor's rights, interest and title to any and all real and personal property, if any, designated on a notice of abandonment filed by the Debtor on or before the Confirmation Date. Such notice will specify the Debtor's property that the Debtor seeks to abandon with reasonable particularity, and shall be served upon those parties entitled to notice under Bankruptcy Rule 2002. Any assets owned by the Debtor and provided for under the Plan as designated on a notice(s) of abandonment filed by the Debtor with the Bankruptcy Court on or before the Confirmation Date shall be deemed abandoned

as of the Effective Date pursuant to Bankruptcy Code section 554 without further order of the Bankruptcy Court, unless a party files an objection to such notice no later than ten (10) days following the service of such notice.

**Section 10.09 Books and Records**. To the extent that the Debtor continues to exercise dominion and control over books and records as of the Effective Date, the Debtor shall transfer such books and records to the Liquidation Trust and the GUC Liquidation Trust in whatever form, manner, or media those books and records existed immediately prior to the transfer thereof to the Liquidation Trust and the GUC Liquidation Trust, unless such books and records are maintained by the Buyer and access provided to the Debtor pursuant the terms of the Sale Order. The Liquidation Trust and the GUC Liquidation Trust shall be deemed authorized but not required to, abandon all such books and records on or after one (1) year from the Effective Date, provided, however, that the Liquidation Trust and the GUC Liquidation Trust shall not dispose or abandon any books and records that are reasonably likely to pertain to pending litigation in which the Debtor or its current or former officers or directors are a party or that pertain to Claims without further order of the Bankruptcy Court. Pursuant to section 554 of the Bankruptcy Code, this Section 10.09 of the Plan shall constitute a motion and notice, so that no further notice or Bankruptcy Court filings are required to effectuate the aforementioned abandonment of the books and records of the Debtor.

**Section 10.10 Amendments**.

(a)     **Pre-Confirmation Amendment**. The Plan Proponent may modify the Plan at any time prior to the entry of the Confirmation Order provided that the Plan, as modified, and the Disclosure Statement pertaining thereto meet applicable Bankruptcy Code requirements, including those set forth in section 1125.

(b)     **Post-Confirmation Amendment Not Requiring Resolicitation**. After the entry of the Confirmation Order, the Plan Proponent or Liquidation Trustee may, upon reasonable prior written notice to the GUC Liquidation Trustee, modify the Plan to remedy any defect or omission or to reconcile any inconsistencies in the Plan or in the Confirmation Order, as may be necessary to carry out the purposes and effects of the Plan, provided (i) the Plan Proponent obtains approval of the Bankruptcy Court for such modification, after notice and a hearing, and (ii) such modification shall not materially and adversely affect the interests, rights, or treatment, of any Class under the Plan.

(c)     **Post-Confirmation Amendment Requiring Resolicitation**. After the Confirmation Date and before the Effective Date of the Plan, the Plan Proponent or Liquidation Trustee may, upon reasonable prior written notice to the GUC Liquidation Trustee, modify the Plan in a way that materially or adversely affects the interests, rights, treatment, or Distributions of a class of Claims (other than GUC Settlement Claims), provided: (i) the modified Plan meets applicable Bankruptcy Code requirements; (ii) the Plan Proponent or Liquidation Trustee obtains Bankruptcy Court approval for such modification, after notice to all creditors entitled to receive notice pursuant to the Bankruptcy Code and the Bankruptcy Rules and a hearing; (iii) such modification is accepted by at least two-thirds in amount, and more than one-half in number, of Allowed Claims voting in each Class affected by such modification; and (iv) the Plan Proponent

or Liquidation Trustee complies with section 1125 of the Bankruptcy Code with respect to the modified Plan.

**Section 10.11 Successors and Assigns**. The rights, benefits, and obligations of any Person named or referred to in the Plan shall be binding upon, and shall inure to the benefit of, the heir, executor, administrator, successor, or assign of such Person.

**Section 10.12 Confirmation Order and Plan Control**. To the extent the Confirmation Order and/or the Plan is inconsistent with the Disclosure Statement, the Liquidation Trust Agreement, the GUC Liquidation Trust Agreement, or any other agreement entered into between the Debtor and any third party, the Plan shall control the Disclosure Statement and any previous agreements and the Confirmation Order shall control the Plan.

**Section 10.13 Notices**. Any notice required or permitted to be provided under the Plan, unless otherwise provided herein, shall be in writing and served by either (a) certified mail, return receipt requested, postage prepaid, (b) hand delivery, or (c) overnight delivery service, postage prepaid, and addressed as follows:

**For the Debtor:**

The Proton Therapy Center, LLC
320 Wood Beach Drive,
Santa Rosa Beach, FL 32459
Attn: Mark Andrews, Chief Restructuring Officer

with copies to:

**MCDERMOTT WILL & EMERY LLP**
2501 North Harwood Street, Suite 1900
Dallas, TX 75201
Telephone: (214) 295-8000
Facsimile: (972) 232-3098
mhelt@mwe.com and jhaake@mwe.com
Attn: Marcus A. Helt, Esq. and Jack G. Haake, Esq.

**For the Liquidation Trustee:**

[TBD]

**For the GUC Liquidation Trustee:**

**MANIER & HEROD, P.C.**
1201 Demonbreun Street
Suite 900
Nashville, TN 37203
mcollins@manierherod.com
Attn: Michael E. Collins

**For the Secured Lender:**

**GREENBERG TRAURIG, LLP**
One International Place, Suite 2000
Boston, MA 02110
Telephone: (617) 310-6000
kevin.walsh@gtlaw.com and colleen.murphy@gtlaw.com
Attn: Kevin J. Walsh, Esq. and Colleen Murphy, Esq.

**For the Committee:**

**SILLS CUMMIS & GROSS, P.C.**
One Riverfront Plaza
Newark, NJ
Telephone: (973) 643-7000
asherman@sillscummis.com and bmankovestkiy@sillscummis.com
Attn: Andrew H. Sherman, Esq. and Boris I. Mankovetskiy, Esq.

**Section 10.14** **Post-Effective Date Notice**. Pursuant to Bankruptcy Rule 2002 and any applicable local Bankruptcy Rules, notice of all post-Effective Date matters for which notice is required to be given shall be deemed sufficient if served upon the US Trustee's Office, counsel to the Liquidation Trustee, the GUC Liquidation Trustee, and any creditor that has a direct pecuniary interest in the relief sought by the pleading. With the exception of the US Trustee, any Person desiring to remain on the Debtor's Bankruptcy Rule 2002 service list shall be required to file a request for continued service and to serve such request upon counsel to the Liquidation Trustee. Parties who do not file a request for continued service shall be removed from the Debtor's Bankruptcy Rule 2002 service list upon the Effective Date and shall be served with pleadings only where they have a direct pecuniary interest in the relief sought by the pleading. Notice of the requirement to file a request for continued service will be provided in the notice sent to all creditors regarding the confirmation of the Plan.

**Section 10.15** **Substantial Consummation**. On the Effective Date, the Plan shall be deemed to be substantially consummated under sections 1101 and 1127(b) of the Bankruptcy Code.

**Section 10.16** **Post-Confirmation Fees and Reports**. Unless otherwise ordered by the Bankruptcy Court, the Debtor or the Liquidation Trustee, as applicable, shall be responsible for the timely payment of all fees incurred pursuant to section 1930 of Title 28 of the United States Code. Unless ordered by the Bankruptcy Court, the Debtor or the Liquidation Trustee, as applicable, also shall file with the Bankruptcy Court, and serve on the US Trustee, a quarterly financial report for each quarter (or portion thereof) that the Chapter 11 Case remains open, in a format prescribed by the US Trustee.

**Section 10.17** **Deemed Acts**. Whenever an act or event is expressed under the Plan to have been deemed done or to have occurred, it shall be deemed to have been done or to have occurred without any further act by any party, by virtue of the Plan and the Confirmation Order.

**Section 10.18  Reservation of Rights**. Except as expressly set forth in the Plan, the Plan shall have no force or effect unless the Bankruptcy Court shall enter the Confirmation Order, and the Confirmation Order shall have no force or effect if the Effective Date does not occur. None of the filing of the Plan, any statement or provision contained in the Plan, or the taking of any action by the Debtor with respect to the Plan, the Disclosure Statement, or the Plan Supplement shall be, or shall be deemed to be, an admission or waiver of any rights of the Debtor with respect to the holders of Claims or Interests prior to the Effective Date.

**Section 10.19  Term of Injunctions or Stays**. Unless otherwise provided in the Plan or in the Confirmation Order, all injunctions or stays in effect in this Chapter 11 Case pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court shall remain in full force and effect until the Chapter 11 Case is closed. All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.

**Section 10.20  Entire Agreement**. Except as otherwise indicated, the Plan (including, the documents and instruments in the Plan Supplement) supersedes all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

DM_US 192080091-6.114791.0011

Dated: December 9, 2022
Nashville, Tennessee

Respectfully submitted,

**WALLER LANSDEN DORTCH & DAVIS, LLP**

*/s/ David E. Lemke*
David E. Lemke (Tenn. Bar No. 013586)
Tyler N. Layne (Tenn. Bar No. 033401)
511 Union Street, Suite 2700
Nashville, Tennessee 37219
Telephone: (615) 244-6380
Facsimile: (615) 244-6804
David.Lemke@wallerlaw.com
Tyler.Layne@wallerlaw.com

-and-

**MCDERMOTT WILL & EMERY LLP**

*/s/ Jack G. Haake*
Marcus A. Helt (admitted *pro hac vice*)
Jack G. Haake (admitted *pro hac vice*)
2501 North Harwood Street, Suite 1900
Dallas, Texas 75201
Tel: (214) 210-2821
Fax: (972) 528-5765
mhelt@mwe.com
jhaake@mwe.com
***COUNSEL FOR THE DEBTOR AND DEBTOR-IN-POSSESSION***